# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Hale*, 2012 IL App (1st) 103537

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JAMES HALE, Defendant-Appellee. |
| District & No. | First District, Second Division<br>Docket No. 1-10-3537 |
| Filed | September 18, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The denial of the State's motion to introduce evidence of other crimes in a prosecution arising from a murder was reversed, since the probative value of the evidence at issue substantially outweighed its prejudicial effect. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-CR-24440; the Hon. Douglas J. Simpson, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |

Counsel on
Appeal

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Veronica Calderon Malavia, and Douglas P. Harvath, Assistant State's Attorneys, of counsel), for the People.

Law Office of Tony Thedford, of Chicago (Tony Thedford, of counsel), for appellee.

Panel

PRESIDING JUSTICE QUINN delivered the judgment of the court, with opinion.
Justice Connors concurred in the judgment and opinion.
Justice Cunningham dissented, with opinion.

**OPINION**

¶ 1    On November 20, 2007, defendant James Hale, along with codefendant Randy Rice, was charged with first-degree murder, aggravated discharge of a firearm, and mob action under indictment number 07 CR 24440. These charges were based on the shooting death of Shantiel Clark. In a separate matter, Hale and Rice were also charged with attempted first-degree murder, aggravated battery with a firearm, and aggravated discharge of a firearm under indictment number 07 CR 24439. These charges were based on the shooting of Erzka Scott. This appeal arises from a June 21, 2010 order entered by the circuit court of Cook County that denied the State's motion *in limine* to introduce proof of other crimes during the course of Hale's trial for the shooting death of Shantiel, and an October 22, 2010 order denying the State's motion to reconsider. On appeal, the State argues that: (1) the trial court applied the incorrect legal tests in making its rulings on the State's motion *in limine* and motion for reconsideration; and (2) the trial court erred in denying its motion *in limine* and motion for reconsideration because the evidence in question was admissible under the continuing-narrative exception and as other-crimes evidence. For the following reasons, we reverse the judgment of the circuit court of Cook County.

¶ 2                                  BACKGROUND
¶ 3    On November 11, 2005, at 10:23 p.m., Erzka was standing outside her home at 3747 W. 135th Place in Robbins, Illinois. She heard three or four gunshots coming from the direction of 3817 W. 139th Street and felt something strike her in the head. Erzka then fell to the ground and was taken to the hospital. She was unable to identify the shooter and the case went unsolved as the police developed no leads.

¶ 4    On that same night, at 10:30 p.m., William Jackson was driving his car southbound on

Pulaski Road at approximately 152nd Street, less than 15 blocks from 3817 W. 139th Street, with Michael Smith in the front passenger seat and Shantiel in the backseat. Shantiel was seven months pregnant at the time. Another car, driven by Tony Garret and containing multiple passengers, pulled along side William's car. Tony and at least three of his passengers fired bullets into William's car, striking Shantiel several times. William then pulled into a nearby gas station and Shantiel died on the floor of the gas station. William and Michael survived the shooting and were able to positively identify Tony as one of the shooters; however, they could not identify any of the other shooters.

¶ 5    While Tony's case was pending, an informant, Keonte McDowell, came forward and provided more details about Shantiel's shooting. Keonte identified Hale and Rice as the other shooters. Based on this information, the police arrested Hale and Rice and each gave a detailed confession. Hale stated that prior to the night of the shooting, an individual named "Mario" had kidnapped, robbed, and pistol-whipped Tony. On the night of the shooting, Tony gathered Hale and Rice to go looking for Mario in retaliation. Hale stated that they were driving around in Tony's car armed with guns so they could shoot Mario when they found him. As Hale and his companions approached 3817 W. 139th Street, they thought they saw Mario and got out of the car. After they got out of the car, a group of unidentified people began firing bullets at Hale and his companions. Hale stated that he fired back at the group in self-defense, and he believed that a girl had been shot during the exchange. Hale and his companions then got back into Tony's car and continued looking for Mario. As they were driving southbound on Pulaski Road, they spotted William's car, which they thought contained Mario. Hale stated that several people from Tony's car began to shoot at William's car, but his gun jammed. Hale stated that after the shooting, Tony drove away.

¶ 6    On November 20, 2007, Hale and Rice were charged with first-degree murder, aggravated discharge of a firearm, and mob action in connection with Shantiel's death. Also in November 2007, Hale and Rice were charged with attempted first-degree murder, aggravated discharge of a firearm, and aggravated battery with a firearm in connection with the shooting of Erzka. On December 17, 2009, the State filed a motion *in limine* in Hale's trial for the murder of Shantiel to introduce evidence regarding Erzka's shooting. On June 21, 2010, the trial court held a hearing on the State's motion. The State argued that Hale's participation in Erzka's shooting was part of the continuing narrative of the events that led to Shantiel's death. The State also argued that Hale's participation in Erzka's shooting supports its theory that Hale is guilty of murder because it establishes: (1) Hale's identity; (2) motive; (3) intent; (4) absence of an innocent frame of mind; (5) lack of self-defense; (6) dislike toward the intended victim; (7) accountability; (8) state of mind; (9) proximity to Shantiel's death; (10) circumstances of the murder; (11) corroboration of Hale's confession; and (12) the integrity of Hale's confession. In response, Hale argued that Erzka's shooting and Shantiel's shooting were two separate and unrelated incidents, and that the State was only trying to admit evidence of Erzka's shooting to show Hale's propensity to commit crimes. The trial court denied the State's motion *in limine*. The trial court held that Erzka's shooting was not part of the continuing narrative of Shantiel's shooting. The trial court also found that the evidence regarding Erzka's shooting constituted other-crimes evidence and held that it would not be admitted because it was more prejudicial than probative. The trial

court noted that if the defense opened the door by attacking the integrity of Hale's confession in any way, it would reconsider its ruling.

¶ 7 On July 1, 2010, the State filed a motion to reconsider the trial court's order denying its motion *in limine*. On October 22, 2010, the trial court held a hearing on the State's motion to reconsider. In addition to the many arguments presented in the State's motion *in limine*, the State argued that Erzka's shooting was part of the continuing narrative of Shantiel's shooting because the jury would not be able to understand the circumstances of Shantiel's shooting without the full story of what took place that night. The State also argued that evidence of Erzka's shooting established Hale's accountability for his co-offenders because it shows that they were all acting with a common purpose and common design as a team throughout the entire night. Finally, the State argued that evidence of Erzka's shooting established the reliability of Hale's confession because the police were previously unaware of Erzka's shooting and, thus, could not coerce Hale to provide those details. In response, Hale argued that because Erzka's shooting and Shantiel's shooting were separate and distinct events, Hale's accountability for Shantiel's death must be proved without evidence of the earlier shooting. The trial court denied the State's motion for reconsideration. The trial court again held that Erzka's shooting was not part of the continuing narrative of Shantiel's shooting because they were separate and distinct events. The trial court held that to admit evidence of Erzka's shooting as other-crimes evidence would be too prejudicial because it would present the picture of a crime spree to the jury where the only connection between the incidents was the search for Mario. The trial court also held that Hale's accountability to his co-offenders for Shantiel's death needs to be based only on the evidence regarding Shantiel's shooting.

¶ 8 On November 16, 2010, the State filed a certificate of substantial impairment and a notice of appeal, pursuant to Illinois Supreme Court Rule 604(a)(1) (eff. July 1, 2006).

¶ 9                                    ANALYSIS

¶ 10 In this case, the State is challenging the trial court's denial of both its motion *in limine* to introduce proof of other crimes and its motion for reconsideration. We note that the parties disagree as to the standard of review that this court should apply. The State concedes that evidentiary rulings are ordinarily reviewed for an abuse of discretion. *People v. Caffey*, 205 Ill. 2d 52, 89 (2001). A trial court has abused its discretion only when its ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would adopt the view of the trial court. *Id*. However, the State points out that appellate courts review evidentiary rulings *de novo* where "a trial court's exercise of discretion has been frustrated by an erroneous rule of law." (Internal quotations marks omitted.) *Id*. The State claims that although the trial court largely applied the correct legal tests regarding the admissibility of other-crimes evidence, it failed to do so with respect to the issues of accountability and necessity of the evidence at trial. Therefore, the State asks this court to review the trial court's rulings *de novo*.

¶ 11 The State argues that the trial court misinterpreted the standard of admissibility of other-crimes evidence for the purpose of accountability because in its ruling denying the State's motion for reconsideration, the trial court stated:

-4-

"I agree with the defense in terms of accountability, that the accountability needs to rise or fall in the State's view in the incident that happened on *** Pulaski. The fact that they acted in concert in another incident is just too prejudicial to allow it in to establish accountability. If that's the case, then the State would ask and courts would allow prior incidents of four or five different gang members in to show that they were accountable for each other's action on a crime that occurred perhaps weeks later.

I think again that would be stretching the other crimes evidence for the purposes of accountability."

The State interpreted the trial court's statement as ruling that other-crimes evidence is *never* admissible for the purpose of accountability. The State points out that it has long been held in Illinois that evidence of other crimes is admissible where it tends to prove a common design, scheme, or plan of the defendant. *People v. Rose*, 198 Ill. App. 3d 1, 6 (1990). Thus, the State argues that evidence of Erzka's shooting should be admissible to establish Hale's accountability for his co-offenders' actions in Shantiel's shooting. The State also claims that the trial court's "slippery slope basis" was inappropriate because the State never sought to introduce any other prior incidents, and it makes no sense to deny the admission of otherwise admissible evidence on the basis that it would be too prejudicial if additional hypothetical evidence were allowed.

¶ 12    Upon full review of the record, it is clear that the trial court viewed Erzka's shooting and Shantiel's shooting as two separate and distinct events. The court reasoned that in this case, evidence of Erzka's shooting was too prejudicial to be presented to a jury for the purpose of establishing Hale's accountability for the actions of his co-offenders in Shantiel's shooting. The record does not support the State's contention that the trial court implied that other-crimes evidence can *never* be admitted to establish accountability. On the contrary, the court was simply making a ruling that was unique to the facts of this case.

¶ 13    Additionally, the State argues that the trial court misinterpreted the standard of admissibility for other-crimes evidence when it stated "I don't believe the State needs to bring this in as a part of the continuing narrative." The State claims that the trial court should not base its ruling on the amount of evidence it believes the State needs to successfully prosecute a case; rather, it should make its ruling based on whether the evidence is admissible as a matter of law. "Although the State possibly could have proved its case without this evidence, there is no rule that requires the State to present a watered-down version of events simply because otherwise highly probative evidence is unflattering to defendant." *People v. Rutledge*, 409 Ill. App. 3d 22, 26 (2011). Finally, we note that in *People v. Ingram*, 316 Ill. App. 3d 319, 324 (2000), the court applied a *de novo* standard of review to a circuit court ruling granting a motion to suppress where only police witnesses testified, and the defendant did not. We need not agree with the State's argument that the trial court ruling was based on an erroneous rule of law, as we find that the trial court abused his discretion.

¶ 14    We review the remainder of the trial court's rulings using the abuse of discretion standard. The State argues that the trial court erred in ruling that evidence of Erzka's shooting was not part of the continuing narrative of Shantiel's shooting. Evidence of other

crimes is admissible if it is "part of the continuing narrative of the event giving rise to the offense [citation], is intertwined with the event charged [citation], or explains an aspect of the crime charged that would otherwise be implausible [citation]." *People v. Outlaw*, 388 Ill. App. 3d 1072, 1086-87 (2009). Evidence of other crimes may be admissible where it "set[s] the stage" for the charged offense and explains circumstances about the charged offense that might appear improbable. *People v. McFarland*, 259 Ill. App. 3d 479, 481 (1994).

¶ 15    The State argues that Erzka's shooting is inextricably intertwined with Shantiel's shooting. Thus, evidence of Erzka's shooting should be admitted. The State claims that without evidence of Erzka's shooting, the trier of fact will lack a fair understanding of what led to Shantiel's shooting and will be deprived of crucial evidence that would affect its verdict. The State also claims that it will be unable to explain the circumstances of why Hale and the other shooters were driving around and looking for Mario without introducing evidence of Erzka's shooting. In support of its argument, the State argues that there are cases with factual similarities to the instant case in which this court held that evidence of other crimes was admissible under the continuing-narrative exception. See *People v. Johnson*, 368 Ill. App. 3d 1146 (2006) (evidence of defendant conducting multiple drive-by shootings earlier in the night was admissible as part of the continuing narrative of defendant's shooting of an innocent couple in the apartment below defendant's intended target); *People v. Lewis*, 243 Ill. App. 3d 618 (1993) (evidence that defendants assaulted their enemy and shot his car windows earlier in the night was admissible because it was intertwined with and led to defendants' murder of a bystander in a group where the defendants mistakenly believed their enemy was present); *People v. Slater*, 393 Ill. App. 3d 977 (2009) (evidence that defendant committed domestic battery against his girlfriend right before defendant killed a stranger was admissible under the continuing-narrative exception to explain defendant's hostile reaction to the stranger); *People v. Hale*, 326 Ill. App. 3d 455 (2001) (evidence of defendants' earlier killing spree in Indiana was admissible to explain that defendants killed victims in Illinois so that there would be no witnesses of their attempted escape).

¶ 16    Both parties cite *People v. Adkins*, 239 Ill. 2d 1 (2010), as supporting their position. In *Adkins*, the defendant was charged with committing a murder during the course of a burglary. The State presented evidence that the defendant had burglarized an apartment owned by a person named Callahan prior to burglarizing the murder victim's apartment. Callahan lived in the same building as the murder victim and his apartment was burglarized the same day as the murder victim's apartment. *Id.* at 22. The supreme court held that the evidence regarding the burglary of Callahan's apartment was properly admitted in the murder case "because it was part of the continuing narrative of the charged murder." *Id.* at 33.

¶ 17    Defendant cites *Adkins* for its holding that "other-crimes evidence may not be admitted under the continuing narrative exception, even when the crimes occur in close proximity, if the crimes are distinct and 'undertaken for different reasons at a different place at a separate time.' *People v. Lindgren*, 79 Ill. 2d 129, 139-40 (1980)." *Adkins*, 239 Ill. 2d at 33.

¶ 18    In *Lindgren*, the defendant told his girlfriend that he murdered her grandfather after he refused to tell the defendant where he kept his money. The defendant forced his girlfriend to go with him to the scene of that murder. The defendant then forced her to go with him to his ex-wife's house. He set that house on fire, claiming he was angry with his ex-wife for not

being at home. The trial court permitted the State to use the evidence relating to the arson in its murder case against the defendant. The appellate court reversed based on this ground and remanded for a new trial. *People v. Lindgren*, 68 Ill. App. 3d 141 (1979). In affirming the reversal, the supreme court held that "the arson evidence is not admissible as part of a continuing narrative of crime. This was a distinct crime undertaken for different reasons at a different place at a separate time." *Lindgren*, 79 Ill. 2d at 139-40. The facts of the instant case, where the earlier shooting is offered to prove the on-going motive of defendant and his partners–to locate and shoot Mario–makes *Adkins* applicable and *Lindgren* inapposite.

¶ 19    Although the appellate court cases referenced by the State do contain factual similarities to the instant case, defendant argues that unlike the cases referenced by the State, Hale's role in the earlier shooting was markedly different from his role in the charged offense. Hale's confession, as described by the parties,[1] stated that on November 11, 2005, Hale, Rice, Tony and others were driving around looking for Mario so they could shoot him. Once they approached 3817 W. 139th Street, they thought they saw Mario and got out of Tony's car. A short time later, a group of unidentified people began shooting at Hale and his companions. Hale stated that he fired back at the group in self-defense and believed a girl got shot as a result of the exchange. The State alleges that the result of this exchange was the shooting of Erzka. Defendant argues that, unlike the defendants in the cases cited by the State, Hale and his companions were not the aggressors in Erzka's shooting. Hale and his companions were returning fire in self-defense after being shot at. They did not initiate the gunfire. Although Hale and his companions were looking to shoot Mario in both instances, defendant argues that the purpose of Hale's participation in Erzka's shooting was completely different from the purpose of his participation in Shantiel's shooting. Thus, the two events were separate and distinct.

¶ 20    The trial court agreed with this reasoning. The trial court held that the two shootings were separate incidents and that Erzka's shooting did not fall within the continuing-narrative exception. The trial court reasoned that the shooting of Erzka was not related to Mario or the dispute between Hale's group and Mario in any way.

¶ 21    We disagree with the reasoning of the trial court. According to defendant's statement, he and his companions exited their car on 139th Street in order to shoot Mario. Defendant claimed that shots were fired in his direction and he and his group responded by shooting back, apparently hitting Erzka in the head. The fact that this shooting was allegedly in response to being shot at by unknown persons does not change defendant's admitted intent in his actions of locating and shooting Mario.

¶ 22    Quite recently, this division of the First District addressed whether the circumstances of a prior shooting incident were properly admitted into evidence in a subsequent shooting, in *People v. Donegan*, 2012 IL App (1st) 102325 (June 26, 2012). Donegan initially shot at a man named Robinson because Robinson was a Four Corner Hustler who had ridden on a motor scooter into Donegan's gang's territory. Donegan was then hit by a car driven by other

---

[1]A transcript of Hale's actual confession is not included in the record on appeal; however, in their briefs, the parties provide nearly identical descriptions of the contents of Hale's confession.

Four Corner Hustlers. Two days later, Donegan participated in a drive-by shooting at a group of people that included members of the rival gang, killing a man named Moseley. *Id.* ¶ 77.

¶ 23    On appeal, Donegan asserted that it was illogical and untenable to argue that his motive for shooting Moseley was that he had previously shot at Robinson. We rejected this argument, holding "[w]hile it is true that defendant was seeking revenge for being hit by a car driven by Gangster Disciples, that incident was of a piece with the Robinson shooting and the ongoing war between the two gangs. The incident as a whole was relevant to establish defendant's motive for doing a drive-by shooting in a Gangster Disciple neighborhood, which resulted in Moseley's death." *Id.* ¶ 73. In *Donegan*, the two shootings took place two days apart. In the present case, the shootings of the two young women victims were seven minutes apart. The holdings in *Donegan*, *Adkins*, *Johnson*, *Lewis*, *Slater*, and *Hale* all support admitting the shooting of Erzka into evidence as part of the continuing narrative of defendant's shooting of Shantiel, and the trial court abused its discretion when it found that the two shootings were separate and distinct.

¶ 24    Next, the State argues that evidence of Erzka's shooting should be admissible as other-crimes evidence even outside the continuing-narrative exception, specifically to prove motive, criminal intent, absence of mistake, identity, common design, scheme or plan, accountability, and *modus operandi*. "[E]vidence of other crimes is admissible if it is relevant for any purpose other than to show the defendant's propensity to commit crimes." *People v. Wilson*, 214 Ill. 2d 127, 135 (2005). These purposes include motive, criminal intent, identity, *modus operandi*, or absence of mistake. *Id.* at 135-36. For an exhaustive recital of the purposes for which other-crimes evidence may be admissible, see Michael H. Graham, Cleary and Graham's Handbook of Illinois Evidence § 404.5 (9th ed. 2009). Evidence may also be admissible to establish the accuracy and reliability of a defendant's confession. *People v. Cruz*, 162 Ill. 2d 314, 352, 643 N.E.2d 636, 654 (1994). However, evidence of other crimes is only admissible if its probative value outweighs the risk of unfair prejudice. *People v. Boand*, 362 Ill. App. 3d 106, 125 (2005). Even if other-crimes evidence is relevant, it must not become the focal point of the trial. *Id.* "The trial court should prevent a 'mini-trial' of a collateral offense." *Id.* (citing *People v. Nunley*, 271 Ill. App. 3d 427, 432 (1995)). The determination of whether evidence of other crimes is relevant to a material issue and whether its probative value outweighs its prejudicial effect is in the sound discretion of the trial court. *Boand*, 362 Ill. App. 3d at 125.

¶ 25    The trial court denied the admission of the shooting of Erzka to prove criminal intent and the absence of an innocent frame of mind as it did not see a connection between the shootings. Our holding that the shootings were intertwined and were not separate and distinct supports a similar holding that the shooting of Erzka is admissible to prove defendant's criminal intent and absence of an innocent frame of mind in the shooting of Shantiel. See *Johnson*, 368 Ill. App. 3d at 1156-57.

¶ 26    In ruling on the issue of accountability, the trial court stated that defendant's accountability needed to rise or fall based only on the shooting of Shantiel. This holding is directly contrary to well-settled law. Evidence of other crimes is admissible to establish a defendant's accountability. *Johnson*, 368 Ill. App. 3d at 1156-57. Further, "[t]o prove that the defendant possessed the intent to promote or facilitate the crime, the State may present

evidence which establishes beyond a reasonable doubt that (1) the defendant shared the criminal intent of the principal or (2) there was a common criminal design." *People v. Williams*, 193 Ill. 2d 306, 338 (2000). "Proof of the common purpose or design *** may be drawn from the circumstances surrounding the commission of an act by a group." *In re W.C.*, 167 Ill. 2d 307, 338 (1995). The shooting of Erzka is admissible to show defendant's participation in a common scheme or design and his accountability for his partners' actions in the shooting of Shantiel.

¶ 27　　The trial court also did not believe that the earlier shooting would help to corroborate defendant's confession. It is well settled that evidence of other crimes is admissible to establish the accuracy and reliability of a defendant's confession. *Cruz*, 162 Ill. 2d at 352. When a suspect tells the police things that only the actual offender could have known, or he admits to things about which the police were previously unaware, these factors corroborate a confession. *People v. Williams*, 285 Ill. App. 3d 394, 396-97 (1996). In the instant case, it is undisputed that prior to defendant's confession, the police had developed no leads for Erzka's shooting. The fact that the police did not know who was responsible for that shooting until defendant supplied that information lends substantial credibility to the confession.

¶ 28　　It is true that the trial court ruled that it would consider allowing the State to present other-crimes evidence if defendant challenged his confession. However, since the trier of fact must determine the weight and reliability of a defendant's confession regardless of whether he challenges its reliability, we hold that the State should be entitled to establish its accuracy and reliability during its case-in-chief. Illinois Pattern Jury Instructions, Criminal, No. 3.06-3.07 (4th ed. 2000); *Williams*, 285 Ill. App. 3d at 400; *Cruz*, 162 Ill. 2d at 352.

¶ 29　　We do not consider the State's arguments regarding other bases to allow the evidence of the shooting of Erzka as the previously discussed bases are more than sufficient. We do address two other concerns expressed by defendant and the trial court.

¶ 30　　As previously explained, "[t]he trial court should prevent a 'mini-trial' of a collateral offense." *Boand*, 362 Ill. App. 3d at 125. The State made a proffer before the trial court that, in addition to defendant's confession, the evidence the State wishes to present would consist only of Erzka's testimony (1) that she heard gunshots and was shot while standing at a particular location at a particular time, and (2) that she is unable to identify the perpetrator. The State should be held to this limited evidence at trial, thus avoiding a "mini-trial."

¶ 31　　While the trial court explicitly found that the probative value of other-crimes evidence was substantially outweighed by its prejudicial effect as to the State's proffered basis of being part of a "continuing narrative," we address the issue of unfair prejudice as applying to all bases the State argues.

¶ 32　　On appeal, defendant cites three cases in support of his argument that the probative value of the evidence of the earlier shooting is substantially outweighed by its possible prejudice. In *People v. Nunley*, 271 Ill. App. 3d 427 (1995), the defendant was charged with the March 6, 1988 armed robbery and murder of Paul Ray, Jr. The circuit court denied the defendant's pretrial motions *in limine* to bar the State from putting into evidence the fact that, on July 11, 1989, defendant stabbed his own mother and killed her dog. This court reversed and remanded the matter for a new trial, holding that although some evidence concerning the

aggravated battery of defendant's mother was admissible to establish the voluntariness of the defendant's confession to murdering Ray, the State put in excessive detail in a repetitive manner, subjecting the defendant to a mini-trial over the attack on his mother and the killing of her dog. *Nunley*, 271 Ill. App. 3d at 432. The two attacks in *Nunley* occurred 16 months apart and were completely unrelated to each other. We find *Nunley* to be completely distinguishable and of no aid to defendant's position.

¶ 33    The defendant also cites *People v. Boyd*, 366 Ill. App. 3d 84 (2006). In *Boyd*, the defendant was charged with the aggravated criminal sexual assault of L.M. after kidnaping her off the street in Hyde Park. The trial court allowed evidence of a different, uncharged, sexual assault committed by the defendant 11 days earlier on the far west side of Chicago. On appeal, this court held that the evidence of the earlier sexual assault was admissible under the *modus operandi* exception, even though this basis was not argued by the State at trial. *Id.* at 93. The defendant also argued that the trial court failed to weigh the probative value of the evidence of the earlier assault against its potential for prejudice. This court agreed, but held:

> "Given the striking similarities between the charged and uncharged offenses and the short period of time between the two offenses, it is clear the probative value of the evidence to prove propensity (or intent) was strong. We do not see how the risk of unfair prejudice could be weighty enough to substantially outweigh that probative value. For that reason, we find the trial court's failure to conduct the balancing test was harmless error." *Boyd*, 366 Ill. App. 3d at 95.

As did the court in *Boyd*, we find that the probative value of the evidence of the earlier shooting substantially outweighs its risk to cause unfair prejudice.

¶ 34    Finally, defendant cites to our supreme court's holding in *People v. Ward*, 2011 IL 108690. In *Ward*, the court considered the applicability of section 115-7.3(c) of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-7.3(c) (West 2006)), which permits the State to introduce evidence in a criminal sexual assault case that the defendant also committed another criminal sexual assault for any purpose, including to show the defendant's propensity to commit criminal sexual assaults. This statute is not applicable in any manner to the instant murder case.

¶ 35    Evidence that is relevant and otherwise admissible should not be excluded because it may also tend to prejudice the accused. *People v. Patterson*, 154 Ill. 2d 414, 458 (1992). Rather, trial courts should only exclude such evidence–including evidence of other crimes–if its prejudicial effect substantially outweighs its probative value. *People v. Illgen*, 145 Ill. 2d 353, 365 (1991). Evidence has been defined as being unduly or unfairly prejudicial when it has "an undue tendency to suggest decision on an improper basis, commonly an emotional one, such as sympathy, hatred, contempt, or horror." *People v. Edgeston*, 157 Ill. 2d 201, 237 (1993). "The danger of unfair prejudice speaks to the capacity of some concededly relevant evidence to lure the fact finder into declaring guilt on a ground different from proof specific to the offense charged." *People v. Lima*, 328 Ill. App. 3d 84, 97 (2002).

¶ 36    The proffered other-crimes evidence in this case is not unfairly prejudicial as it does not tend to allow a jury to decide the defendant's guilt based on emotion, hatred, contempt, horror or any ground other than the proof offered relating to the murder of Shantiel.

Consequently, we hold that the trial court abused its discretion when it found that the probative value of the proffered evidence was substantially outweighed by its prejudicial effect.

¶ 37       For the above reasons, we reverse the circuit court's judgment denying the State's motion to allow evidence of other crimes. We remand this matter with directions to permit the introduction of the evidence at the defendant's trial.

¶ 38       Reversed and remanded with directions.

¶ 39       JUSTICE CUNNINGHAM, dissenting.

¶ 40       I respectfully dissent from the judgment of the majority. In my view, the trial court's ruling was correct. Since the majority agrees that the standard of review is abuse of discretion, the majority's ruling disregards the well-established principle upon which our analysis and ruling must be based. It cannot be credibly held that the trial court's ruling barring the evidence of another crime, was so arbitrary, fanciful and unreasonable that no reasonable person would ever make such a ruling. *People v. Caffey*, 205 Ill. 2d 52, 89 (2001). On the contrary, the trial court exercised its discretion reasonably within the parameters of the facts, circumstances and established law. The holding of the majority has in effect removed the trial court's discretion on the basis of the State's very weak arguments. The trial court followed settled law regarding the introduction of evidence of other crimes. It is safe to say that the trial court was in the best position to view the evidence, the parties and all of the attendant facts and circumstances. Exercising its discretion regarding the admissibility of evidence is one of the main functions of a trial court. The majority's analysis and its holding that the evidence is admissible allows the State to buttress its case with evidence which I believe the trial court correctly found inadmissible. The majority's reversal also gives the State the opportunity to conduct a mini-trial within the trial, in contravention of well established law.

¶ 41       The abuse of discretion standard "is the most deferential standard of review–next to no review at all." *In re D.T.*, 212 Ill. 2d 347, 356 (2004). An abuse of discretion only occurs where no reasonable person would agree with the trial court's decision. *Benjamin v. McKinnon*, 379 Ill. App. 3d 1013, 1022 (2008). Under the facts of this case, it is a disregard of existing law to characterize the trial court's denial of the State's motion as an abuse of discretion. There is hardly anything more solidly within the discretion of a trial judge than the determination of what evidence is admissible. The State's argument that evidence of Erzka's shooting was admissible under the continuing-narrative exception and also within the criteria of other-crimes evidence is creative but without merit.

¶ 42       In the case at bar, the defendant has confessed to the crime for which he is being tried. Further, the trial court made it clear that although it denied the State's motion to introduce evidence of Erzka's shooting, if the defense attempted to undermine the defendant's confession in any way, regarding Shantiel's shooting, the evidence in question would be allowed. In other words, the trial court followed the law and even put a substantial safeguard in place to ensure that there was a level playing field. The trial court correctly exercised its

discretion to keep the State from indirectly doing that which it cannot do directly. Specifically, the trial court's ruling is designed to keep the State from using inadmissible evidence to convict the defendant. Evidence of other crimes may be admissible if it is relevant for any purpose other than to show a defendant's propensity to commit crime. *People v. Donoho*, 204 Ill. 2d 159, 170 (2003). A careful analysis of the facts of this case shows no other legitimate reason for the introduction of Erzka's shooting.

¶ 43       While the State raised several bases on which to support its motion to introduce evidence of Erzka's shooting, the thrust of its argument centered upon the continuing-narrative exception. Evidence of other crimes is admissible if it is "part of a continuing narrative of the event giving rise to the offense [citation], is intertwined with the event charged [citation], or explains an aspect of the crime charged that would otherwise be implausible." *People v. Outlaw*, 388 Ill. App. 3d 1072, 1086-87 (2009). Evidence of other crimes may be admissible where it "sets the stage" for the charged offense and explains circumstances about the charged offense that might otherwise appear improbable. *People v. McFarland*, 259 Ill. App. 3d 479, 481 (1994). However, "other-crimes evidence may not be admitted under the continuing-narrative exception, even when the crimes occur in close proximity, if the crimes are distinct and 'undertaken for different reasons at a different place at a separate time.' [Citation.]" *People v. Adkins*, 239 Ill. 2d 1, 33 (2010).

¶ 44       The State argues that Erzka's shooting is inextricably intertwined with Shantiel's shooting. Thus, evidence of Erzka's shooting should be admitted. The State claims that without evidence of Erzka's shooting, the trier of fact will lack an understanding of what led to Shantiel's shooting and will be deprived of crucial evidence that would affect its judgment. The State also claims that it will be unable to explain the underlying circumstances of the crime charged without the evidence in question. The trial court disagreed, as do I.

¶ 45       The underlying premise for the continuing-narrative exception is that the exception permits the trier of fact to understand the salient aspects of the crime which would otherwise be inexplicable and confusing. However, as the defendant points out, the evidence, even if admitted on this basis, must still fulfill the purpose for which it is being admitted.

¶ 46       In the case at bar, the State's purported reasons for seeking to introduce evidence of Erzka's shooting do not ring true. Even the briefest scrutiny of the facts makes it clear that even without the evidence in question, the confession of the defendant as well as the testimony of other State witnesses provides the purported link which the State claims is necessary to avoid confusing the jury. Further, as the trial court pointed out, the only commonality between the two shootings was the search for Mario. I agree with the trial court that Ezrka's shooting was not part of the continuing narrative with Shantiel's shooting. Each crime was based on something different. In Erzka's shooting, the defendant and his cohorts claimed to be returning fire after being fired upon. In Shantiel's shooting, the defendant and his cohorts believed that they were shooting at Mario. On the other hand, by introducing evidence of Erzka's shooting, the State is setting the stage for a mini-trial. This is an infringement of the defendant's rights. See *People v. Boyd*, 366 Ill. App. 3d 84, 94 (2006). Further, this is particularly important because there is a dispute regarding the circumstances of Erzka's shooting. Introduction of Erzka's shooting invites the jury to engage in a "mini-trial" as to the facts and circumstances of the shooting. Since the defendant is not on trial in

the instant case for Erzka's shooting, this is highly prejudicial. It is not the crime for which this jury is sitting in judgment, yet it is tacitly being invited to consider it. The defendant confessed to the crime charged in the instant case. Further, as discussed, the trial court made its exclusion of the evidence contingent upon the defendant maintaining consistency with his confession, yet the State remains determined to introduce evidence of Erzka's shooting. This leads to the question, What is the questionable evidence really being used to prove? The State argues that evidence of Erzka's shooting should be admissible as other-crimes evidence even outside the continuing-narrative exception.

¶ 47 "[E]vidence of other crimes is admissible if it is relevant for any purpose other than to show the defendant's propensity to commit crimes." *People v. Wilson*, 214 Ill. 2d 127, 135 (2005). These purposes include motive, intent, identity, *modus operandi*, or absence of mistake. *Id.* at 135-36. Evidence may also be admissible to establish the accuracy and reliability of a defendant's confession. *People v. Cruz*, 162 Ill. 2d 314, 352 (1994). However, evidence of other crimes is only admissible if its probative value outweighs the risk of unfair prejudice. *People v. Boand*, 362 Ill. App. 3d 106, 125 (2005). Even if other-crimes evidence is relevant, it must not become the focal point of the trial. *Id.* "The trial court should prevent a 'mini-trial' of a collateral offense." *Id.* (citing *People v. Nunley*, 271 Ill. App. 3d 427, 432 (1995)). The determination of whether evidence of other crimes is relevant to a material issue and whether its probative value outweighs its prejudicial effect is within the sound discretion of the trial court. *Boand*, 362 Ill. App. 3d at 125, 838 N.E.2d at 387. Thus, I believe that the State's arguments are meritless for several reasons. Included among those reasons is the fact that the defendant's confession provides the "back story" for which the State claims it needs the otherwise inadmissible evidence. The defendant has not taken any position that would be bolstered by the absence of the inadmissible evidence. If one accepts the defendant's confession at face value, then there is nothing inexplicable about the circumstances of the instant crime such that a jury would be confused. Further, the trial court ruled that evidence of the enmity among the defendant's cohorts, Garrett and Mario would also be allowed. This would also clearly give the jury the "back story" necessary to place the crime in the proper context and debunks the State's argument for admissibility.

¶ 48 In addition to rejecting the State's argument that the two shootings were part of a continuing narrative of events, the court rejected the argument that Shantiel's shooting could not be understood without evidence of Erzka's shooting. I find the trial court's reasoning and holding to be clear and accurate based on well established legal principles. Further, the trial court found that the evidence was highly prejudicial to the defendant without any real probative value. The trial court's finding that the probative value of Erzka's shooting for the purpose of corroboration of the defendant's confession regarding Shantiel's shooting is outweighed by its prejudicial effect, is not an abuse of discretion. Corroboration of this one aspect of the defendant's confession does not defeat the trial court's assessment and exercise of its discretion. The court found that the State's use of the questionable evidence would in fact present a picture of a "crime spree" to the jury. This would have the effect of suggesting to the jury that if the defendant was on a shooting spree, he is a bad person. Bad people should be convicted. This is precisely the type of over persuasion that the rule is designed to prevent. This would be highly prejudicial to the defendant.

¶ 49    In my view, the cases relied upon by the State and accepted by the majority in its analysis do not support the State's arguments or the majority's holding under these facts. Careful analysis of each of the cases when measured against the facts of this case quickly illuminates their inapplicability and gives the impression that the majority has simply substituted its judgment for that of the trial court. This is impermissible. This is a textbook case of a trial court's exercise of its discretion.

¶ 50    The trial court went to some length to analyze the facts that would support the State's motion. Despite the State's contentions, the trial court did not base its ruling on whether the State already had enough evidence to secure a conviction. Rather, the crux of the trial court's ruling was that the prejudicial effect of the evidence of Erzka's shooting greatly outweighed its probative value. The trial court's ruling was clearly a discretionary ruling. When weighed against the facts and circumstances of this case, settled law and the standard of review, it is difficult to understand how the majority concludes that the trial court's ruling is an abuse of discretion.

¶ 51    For the reasons discussed, I would affirm the trial court's denial of the State's motion *in limine* and bar the State from introducing evidence of the prior, unrelated shooting.