# Illinois Official Reports

## Appellate Court

---

### *Bosman v. Riverside Health System*, 2016 IL App (3d) 150445

---

| | |
|---|---|
| Appellate Court Caption | AUGUST BOSMAN, as Special Administrator of the Estate of Joan Bosman, Deceased, Plaintiff-Appellant, v. RIVERSIDE HEALTH SYSTEM d/b/a Miller Health Care Center and Riverside Senior Living Center, Defendant-Appellee. |
| District & No. | Third District<br>Docket No. 3-15-0445 |
| Filed | October 6, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Kankakee County, No. 11-L-9; the Hon. Kendall O. Wenzelman, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Michael T. Reagan, of Law Offices of Michael T. Reagan, of Ottawa, and Aaron W. Rapier, of Rapier Law Firm, of Naperville, for appellant.<br><br>Matthew A. Arnold, of Momkus McCluskey, of Lisle, for appellee. |
| Panel | JUSTICE LYTTON delivered the judgment of the court, with opinion.<br>Justices Carter and Wright concurred in the judgment and opinion. |

¶ 1    Plaintiff, August Bosman, as special administrator of the estate of Joan Bosman, appeals from the denial of his motion for a new trial. Plaintiff argues that the court erred in replacing a holdout juror with an alternate juror. We reverse and remand.

¶ 2                                            FACTS

¶ 3    In June 2011, plaintiff filed a complaint alleging that Joan Bosman suffered multiple necrotic pressure ulcers while she was a resident of a long-term care facility operated by defendant, Riverside Health System. The case proceeded to a jury trial.

¶ 4    The court initially advised the jury venire about the trial process and read the general instructions regarding the jury's role. The court then began *voir dire*. The court asked the venire whether there was anything about the case that would prevent them from being fair and impartial. The 12 jurors who were later impaneled and the 2 alternates indicated that they would be fair and impartial. The court then asked the potential jurors if any of them had personally been involved in or knew someone who was involved in an incident that resulted in personal injuries or damages, and if the incident resulted in a lawsuit. Juror Dariel Dewit said that her friend had filed a lawsuit against a nursing home after her friend's mother died from injuries sustained while she resided at the facility. Dewit assured the court that her prior experiences would not affect her ability to sit as a juror. Dewit also agreed that she would wait until she heard all of the evidence before reaching any opinions or conclusions, she would follow the law even if she disagreed with it, and she would not use sympathy, bias, or prejudice in reaching her verdict.

¶ 5    Defense counsel asked juror Dewit whether she personally had any experience receiving rehabilitation care or knew someone that had received care. Dewit said that she had no experience receiving rehabilitative care and that she could set aside her friend's experience with the nursing home and decide the case on the evidence presented.

¶ 6    At the conclusion of *voir dire*, a 12-person jury was impaneled, and 2 alternate jurors were selected. Dewit was impaneled as a juror.

¶ 7    After closing arguments, the court read the jury instructions to the jury and the two alternate jurors. The court sent the jury to deliberate. While discussing whether to discharge the alternate jurors, defendant said that it would not agree to a verdict of less than 12 jurors. Plaintiff agreed that the alternate jurors would have to be retained if defendant was not going to agree to a verdict of less than 12 jurors. The court retained the alternates and admonished them not to have any discussion about the case. The alternates were segregated in a separate room during the deliberations.

¶ 8    During the second day of deliberations, the court received three notes from the jury. The first note indicated that the jury was deadlocked. According to the court, the note stated the issues that the jurors agreed and disagreed on and gave some indication as to the breakdown, which the court did not disclose. The court called the jurors and alternates into the courtroom and instructed them, using Illinois Pattern Jury Instructions, Civil, No. 1.05 (2011) (hereinafter, IPI Civil No. 1.05), that the verdict must be unanimous and that it was the jurors' duty "to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment."

¶ 9    After returning to deliberations, the jury sent a second note, which the court read to the parties. The note indicated that the jury had continued deliberations without any change in result and the deliberations were devolving into argument. The court sent a responsive note that instructed the jury to continue to deliberate.

¶ 10    In the afternoon, the court received a third note from the jury, which the court paraphrased to avoid disclosing the juror's positions on the issues. The note indicated that the jury had made no progress and that some individuals felt they would be coerced to sign a verdict form. The court brought the jury and alternates into the courtroom and read Illinois Pattern Jury Instructions, Civil, No. 1.06 (2011) (hereinafter, IPI Civil No. 1.06), which instructed the jury that if it failed to agree on a verdict, the case must be retried. The court instructed the jury to retire and reconsider the evidence in light of its instruction. The court then stood in recess until the next morning.

¶ 11    On the third day of deliberations, the court tendered copies of the three notes to the parties. Each of the notes was signed by the jury foreperson. The first note said:

> "After continued deliberation there is still absolutely no progress. There is one juror who has explicitly clear [*sic*] that she will not change her position, and many of the other jurors on the other side are not willing to reverse themselves. The one juror has repeatedly stated that she's done talking and listening, but that she will sign the verdict just to be done. She has explained that doing so would violate her beliefs and she would feel that her vote would be coerced. It is clear that no additional deliberation will change this result."

The second note said:

> "Following your instructions we have continued deliberating without any change in result. However, the debate is devolving into argument and tempers are beginning to flare. I don't think we can continue without violating your order not to do violence to others opinions."

The third note stated:

> "I'm not exactly sure how to address this issue, or what the appropriate response is, but I feel obligated to ask. The juror who is in the minority has made it clear that she has a significant bias which we believe is inhibiting her ability to give fair consideration to the evidence and both parties. The questions used to screen jurors missed some significant and relevant issues. This juror has told us that she had surgery and a hospital stay which resulted in an infection and complications. She has stated that she cannot judge this situation without reference to that history. It is our considered opinion that her agenda is to punish the [defendant], and her *stated* goal is to send a message to the wider medical community.
>
> As I said, I don't know what, if any resolution there may be, but our jury instruction clearly state[s] that we cannot use prejudice or speculation, and that we must report any violation of these instructions. We have unanimously agreed that this juror is relying upon both, despite our best efforts to convince her of the impropriety of that reliance. Short of substituting an alternate juror this current jury will not be able to return a unanimous verdict." (Emphasis in original.)

¶ 12    After a recess, plaintiff and defendant agreed that they would accept a unanimous verdict of 11 jurors. Defense counsel said that based upon the notes from the jury, he believed the

- 3 -

holdout juror had an undisclosed bias that put her oath in question. The court directed the bailiff to bring the holdout juror into the courtroom, where the court conducted a brief inquiry.

¶ 13    Juror Dewit testified that there was consensus among 11 jurors on at least one issue and she disagreed with these jurors. Dewit said she was unable to change her position on any of the issues in contention. Dewit acknowledged that she had thought about her prior experiences, but "that wasn't what affected [her] decision." Dewit told defense counsel that her vote was not based on a desire to send a message to the wider medical community and that she used her experiences to evaluate the case, as allowed by the jury instructions.

¶ 14    Following Dewit's testimony, defense counsel asked to proceed on the parties' agreement to an 11-person verdict. Plaintiff's counsel withdrew his approval, stating "without being able to verify the accuracy of these statements, which we can't do, then I don't have authority to accept a unanimous verdict of eleven." Defense counsel argued plaintiff's qualification was not part of the original agreement, and he suggested polling the remaining 11 jurors to determine if Dewit had violated her oath. Following arguments from the parties, the court called the jury foreperson to testify.

¶ 15    The foreperson testified that Dewit said she had surgery, got an infection, and then blamed the treating hospital for her infection. Dewit was "intent that [defendant] was at fault, speculating on evidence that was never presented, and saying that it had to have happened because it happened to her." The foreperson said that on the first day of deliberations, Dewit said,

> "she wanted to punish and teach them a lesson about taking care of patients. And then she said a few times since then that she wants to send a message to all the nursing homes and hospitals that they need to treat people better. And that if we give them—if we give the plaintiff a judgment, that that will tell that they need to do a better job."

¶ 16    The court dismissed the foreperson, and defense counsel moved to strike juror Dewit based on her failure to disclose a potential bias during *voir dire* and subsequent issues concerning her credibility. Plaintiff's counsel opposed the motion. The court excused Dewit and replaced her with the first alternate juror. The court then instructed the reconstituted jury to begin deliberations anew.

¶ 17    After the deliberations were restarted, plaintiff moved for a mistrial. The court denied plaintiff's motion, finding that it had dismissed Dewit because she failed to disclose a potential bias against a party during *voir dire*.

¶ 18    After a few hours of deliberations, the reconstituted jury found for defendant. The court polled the jury, and each juror indicated that the verdict was representative of their vote. The court entered a judgment for defendant.

¶ 19                                    ANALYSIS

¶ 20    Plaintiff argues that he was denied a fair trial because the court erred in discharging a holdout juror and there was a reasonable possibility that the dismissal was based on the juror's view regarding the sufficiency of the evidence. See *People v. Gallano*, 354 Ill. App. 3d 941, 953 (2004). We find that the court erred in retaining the alternate jurors through deliberations and impermissibly replaced a deliberating juror with an alternate.

¶ 21    Initially, the parties dispute the standard of review. Plaintiff argues the issue is subject to *de novo* review because it involves a claim of constitutional error—plaintiff's right to a

unanimous jury verdict. Ill. Const. 1970, art. I, § 13. Defendant argues the applicable standard is an abuse of discretion.

¶ 22 This issue is reviewed for an abuse of discretion. *People v. Roberts*, 214 Ill. 2d 106, 121 (2005) ("[m]atters relating to jury selection and management are generally within the discretion of the trial court"); *Addis v. Exelon Generation Co.*, 378 Ill. App. 3d 781, 792 (2007) (court has great discretion in determining whether to excuse a juror). An abuse of discretion occurs when no reasonable person would agree with the trial court's decision. *People v. Hale*, 2012 IL App (1st) 103537, ¶ 41.

¶ 23 The Code of Civil Procedure (Code) provides that one or two additional jurors may be impaneled to serve as an alternate. 735 ILCS 5/2-1106(b) (West 2014). The alternate jurors "shall replace jurors who, prior to the time the jury retires to consider its verdict, become unable to perform their duties." *Id.* "An alternate juror who does not replace a principal juror shall be discharged at the time the jury retires to consider its verdict." *Id.*

¶ 24 Here, the court retained the two alternate jurors through deliberations. Eventually, one alternate juror was called to replace a deliberating juror. Based on the plain language of section 2-1106(b) of the Code, the retention of the alternates and replacement of a deliberating juror was error. *Id.* However, this error only warrants reversal where a party suffers prejudice. *Roberts*, 214 Ill. 2d at 120. To determine if prejudice resulted from the substitution, we

> "consider the totality of the circumstances, including: (1) whether the alternate juror and the remaining original jurors were exposed to outside prejudicial influences about the case; (2) whether the original jurors had formed opinions about the case in the absence of the alternate juror; (3) whether the reconstituted jury was instructed to begin deliberations anew; (4) whether there is any indication that the jury failed to follow the court's instructions; and (5) the length of deliberations both before and after the substitution." *Id.* at 124.

¶ 25 The juror substitution at issue resulted from a deadlock in deliberations. In an attempt to resolve the deadlock, the court initially instructed the jury to continue its deliberations, and later, it instructed the jury that the case would be retried if the jury failed to reach a verdict. See IPI Civil Nos. 1.05, 1.06. Despite these instructions, the foreperson sent out a third note that indicated the jury remained deadlocked potentially due to Dewit's undisclosed bias. At this point, the court had two options: (1) instruct the jury to continue deliberating, or (2) declare a mistrial. *Gallano*, 354 Ill. App. 3d at 954.

¶ 26 Instead of utilizing one of these options, the court conducted an inquiry into Dewit's alleged bias. Plaintiff was prejudiced by this inquiry. The remaining 11 jurors had formed opinions about the case through the course of several votes, and they were then exposed to the outside influences of the juror inquiry, which suggested to them the reason for Dewit's eventual replacement. The inquiry also disclosed the jury's deliberations to the parties. See *Roberts*, 214 Ill. 2d at 124. Therefore, we find the court abused its discretion when it replaced Dewit with an alternate juror after deliberations had already begun.

¶ 27                                                    CONCLUSION

¶ 28 The judgment of the circuit court of Kankakee County is reversed and the cause remanded.

¶ 29 Reversed and remanded.