NOTICE
Decision filed 10/22/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 220346

NO. 5-22-0346

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Wabash County. |
| | ) | |
| v. | ) | No. 21-CF-42 |
| | ) | |
| CHAD M. COVALT, | ) | Honorable |
| | ) | William C. Hudson, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE VAUGHAN delivered the judgment of the court, with opinion.
Justices Moore and Barberis concurred in the judgment and opinion.

**OPINION**

¶ 1 Defendant appeals his convictions and sentences, raising speedy trial, evidentiary, sufficiency of the evidence, unit of prosecution, and sentencing issues. For the following reasons, we vacate two of defendant's convictions and remand for resentencing but otherwise affirm.

¶ 2                                    I. BACKGROUND

¶ 3 On May 27, 2021, defendant was charged, through information, of seven counts. Counts I through III charged predatory criminal sexual assault of the same child, later specified as B.G. 720 ILCS 5/11-1.40(a)(1) (West 2020). Counts IV and V charged child pornography in that on January 1, 2017, to January 31, 2020, defendant filmed Jane Doe (DOB 03/23/2009), who defendant knew was under the age of 18, and the film depicted a lewd exhibition of Jane Doe. *Id.* § 11-20.1(a)(1)(vii). Counts VI and VII charged child pornography in that on January 1, 2017, to

1

January 31, 2020, defendant filmed Jane Doe (DOB 12/12/2008), who defendant knew was under the age of 18, and the film depicted a lewd exhibition of Jane Doe. *Id.*

¶ 4    On August 24, 2022, defendant filed a motion to quash warrant and suppress evidence illegally seized. He argued that on or about May 25, 2021, police officers seized a black Samsung cellular telephone from Ashley Covalt, knowing she was not the owner of the phone and that it was defendant's personal phone. He further argued that the search was unlawful because it was premised on a search warrant issued without probable cause. He also contended the officers never returned the phone. Defendant argued the search warrant complaint did not include any statement or evidence that photographs or videos were lascivious or child pornography other than a conclusory statement that the phone contained photographs of the naked bodies of two minor children, including depictions of their vaginas. He asserted that all subsequent searches of devices, as well as the additional June 1, 2021, search warrant and interrogation on July 7, 2021, were fruits of said unlawful search and should be excluded.

¶ 5    The docket entry dated November 1, 2021, stated that defendant waived any speedy trial demand up to January 4, 2022. Another docket entry dated November 30, 2021, stated that defendant waived his speedy trial rights until April 11, 2022. Also, on November 30, 2021, defendant filed a motion to sever the predatory criminal sexual assault of a child counts from the child pornography counts.

¶ 6    On December 29, 2021, the State filed an amended information, charging 25 additional counts of child pornography (*id.*). Counts VIII through XXII alleged that between January 1, 2017, to January 31, 2020, defendant photographed, and the photographs depicted, a lewd exhibition of various unclothed body parts of Jane Doe (DOB 03/23/2009), who was under the age of 13 when each photograph was taken. Counts XXIII through XXXII alleged defendant photographed, and

2

the photographs depicted, a lewd exhibition of various unclothed body parts of Jane Doe (DOB 12/12/2008), who was under the age of 12 when each photograph was taken.

¶ 7    On January 18, 2022, defendant filed a motion to dismiss, based on failure to state an offense and a speedy trial violation. Defendant argued that the video associated with counts IV through VI and the photographs associated with counts VIII through XXII failed to depict a lewd exhibition and, therefore, those counts failed to allege child pornography. Defendant also argued that he had been in custody in excess of 120 days and waived his right to speedy trial regarding counts I through VII but did not waive his right to speedy trial regarding the additional counts filed in the amended petition. He explained that those counts were not filed at the time he waived his speedy trial rights and, therefore, counts VIII through XXXII should be dismissed.

¶ 8    On January 31, 2022, defendant filed an amended motion to dismiss. The amended motion presented the same arguments as the original motion and included an additional argument that the State was aware of the matters alleged in counts VIII through XXXII at the time defendant was arrested and the initial information was filed. The amended motion further contended that counts VIII through XXXII arose from the same facts as counts IV through VII in that the files alleged in said counts were all found at the same time on the same device.

¶ 9    On February 7, 2022, the State filed a response, arguing that under *People v. Williams*, 204 Ill. 2d 191, 198 (2003), additional charges were subject to the same trial time limitation as the original charges only when the additional charges are subject to compulsory joinder under section 3-3 of the Criminal Code of 2012 (720 ILCS 5/3-3 (West 2020)). The State quoted *Williams*, 204 Ill. 2d at 199 (quoting *People v. Mueller*, 109 Ill. 2d 378, 385 (1985)), which provided that " '[S]ame act' does not include independent acts constituting different offenses: 'There is no requirement of joinder where multiple offenses arise from a series of related acts.' "

3

¶ 10 " 'Section 3-3 is not intended to cover the situation in which several offenses—either repeated violations of the same statutory provision or violations of different provisions—arise from a series of acts which are closely related with respect to the offender's single purpose or plan.' " *Id.* (quoting Ill. Ann. Stat., ch. 38, ¶ 3-3, Committee Comments-1961, at 101-02 (Smith-Hurd 1989)).

¶ 11 The State argued that each count (IV-XXXII) alleged a separate production of child pornography by defendant. It further argued that although each production took place within a similar time frame and depicted the same children, each production did not arise from the same act. The State contended that this situation was not similar to one where a defendant could be charged with either misdemeanor DUI or felony DUI based on the same driving under the influence or a defendant could be charged with varying degrees of murder based on the same killing of an individual. It contended there were different facts and separate offenses for each production of pornography, and not alternate theories.

¶ 12 The State also argued that the video associated with counts IV through VI and the photographs associated with VIII through XXII depicted a lewd exhibition. In support of its argument, the State addressed each of the six factors a court considers in determining lewdness, as provided in *People v. Lamborn*, 185 Ill. 2d 585, 592 (1999).

¶ 13 The court held a hearing on the motion to dismiss on February 8, 2022. Defense counsel stated that the defense did not want to proceed on the speedy trial argument but might renew such argument after relevant evidence was presented at trial. The parties presented argument regarding defendant's lewdness argument. The court took the matter under advisement. Before adjourning, the court granted defendant's motion to sever, and the State averred it would proceed on the child pornography counts.

¶ 14    On February 28, 2022, the court filed an order denying the motion to dismiss based on lewdness. The court attached an exhibit addressing the *Lamborn* factors for each challenged counts and found every video and photograph was lewd.

¶ 15    At a pretrial hearing on March 29, 2022, defense counsel averred that defendant wished to waive his right to a jury trial and requested a bench trial. Counsel also stated that they anticipated that there would be a substantial stipulation to the facts and some live testimony by the State. The court advised defendant of his right to be tried by a jury, and defendant stated he understood. Defendant also stated he discussed the matter with his attorney and that he was not under any disability or under the influence of any substances. Defendant informed the court that he took prescription medications, but those medications did not interfere with his ability to understand the proceedings. Defendant confirmed that no one threatened, forced, or made promises to him to waive his right to trial by a jury. Defense counsel clarified that defendant waived his right to a jury trial only to the child pornography counts and he did not waive such rights regarding counts I through III if such counts were tried.

¶ 16    Counsel then renewed its motion to dismiss counts VIII through XXXII, based on a speedy trial violation. Counsel argued that defendant waived his right to a speedy trial when there were only seven pending counts, and therefore, he could not have waived his speedy trial rights regarding the additional counts. He further argued that the "separate act" exception did not apply and the additional counts were the same act as the initial counts because the videos and photographs were found at the same time and one the same phone. He also contended—citing *People v. Hiatt*, 229 Ill. App. 3d 1094 (1992), and *People v. Sandlin*, 2021 IL App (5th) 190120-U—that the exception where additional charges were included in or implied by the existing counts

5

also did not apply because the charging of four counts of child pornography in no way implied that there would be additional photographs supporting additional counts.

¶ 17     The State argued that *Hiatt* was inconsistent with the more recent Illinois Supreme Court decision in *People v. Gooden*, 189 Ill. 2d 209 (2000), which changed the method and analysis of this issue. The State also cited *Williams*, 204 Ill. 2d 191, and noted that if several offenses were known to the proper prosecuting officer at the time of commencing the prosecution and were within the jurisdiction of a single court, they must be prosecuted in a single prosecution if they were based on the same act. The State further argued that

"compulsory joinder is not intended to cover the situation in which several offenses, either repeated violations of the same statutory provision or violations of different provisions, arise from a series of acts which are closely related with respect to the offender's single purpose of plan. That is, same act does not include independent acts which constitute different offenses."

The State argued that the current situation was a series of related acts, but separate offenses, because each photograph, video, and reproduction was a separate act.

¶ 18     The trial court found that because the photographs were located on the cellular telephone, "it appears as though those would be a situation for a compulsory joinder." Citing *People v. Dryer*, 2021 IL App (2d) 190187, the court stated that compulsory joinder does not apply where "the original charging instrument gave the defendant sufficient notice of the subsequent charges to prepare adequately for trial on those charges." It further stated that where the original charges provided a defendant with sufficient notice of subsequently filed charges, the subsequent charges were not new and additional for purposes of a speedy trial analysis. The court held that counts IV through VII regarding child pornography gave defendant sufficient notice of the subsequently filed

6

charges, which were found on the same cellular telephone. It found any continuances attributable to the original seven counts were therefore attributable to the additional counts and denied the motion to dismiss.

¶ 19    On March 29, 2022, defendant filed a signed waiver of trial by jury. His bench trial addressing counts IV through XXXII began on April 11, 2022. Sergeant Eddie Johnson of the Mt. Carmel Police Department testified that on May 25, 2021, about 9:50 p.m., he received a call from Chief Mike McWilliams who stated that Officer Hopper had been dispatched to defendant's home over a dispute and that there were images of child pornography allegedly found on a phone. Sergeant Johnson met Officer Hopper at the police department, and Officer Hopper turned over a black Samsung cell phone. Officer Hopper told Sergeant Johnson the phone was given to him by Ashley Covalt. After retrieving the phone from Officer Hopper, Sergeant Johnson called Ashley and she stated she observed photographs on defendant's phone that appeared to have been sent by her daughter B.G., which depicted B.G. in a bra and short shorts or a bra and jeans. Ashley advised that those photographs prompted her to access the secured file on defendant's phone, in which she found a video of B.G. and M.B. taken by defendant. Sergeant Johnson went to the Covalt residence, and defendant was found on his bed with pills laying around him. Defendant assured the officer that he was not trying to overdose and just spilled the pills as he tried to take them as prescribed. Defendant consented to an interview at the police station.

¶ 20    Sergeant Johnson testified that he conducted defendant's interview, which was video recorded. He advised defendant of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966) prior to the interview. During the interview, defendant acknowledged that he took the photographs and videos that Ashley reported and that those photographs, at one time, existed on his phone. Defendant stated as soon as he realized the photographs were "lascivious," he deleted them.

7

Defendant denied consent to search his phone. However, Sergeant Johnson obtained a search warrant for the cell phone and subsequently searched the phone. Sergeant Johnson accessed the phone and its secure files using the passcodes provided by Ashley. Sergeant Johnson identified Joint exhibit No. 1 as a flash drive containing the images Sergeant Johnson collected from the secured file on defendant's phone. He also identified Joint exhibit No. 2 as a USB drive containing the entirety of the images and communications he retrieved from defendant's phone. Sergeant Johnson testified that the file names and folders on Joint exhibit No. 2 were file names and folders that he created and were not the names that appeared on defendant's phone.

¶ 21    Sergeant Johnson testified he took scene photographs as a part of his investigation at 327 E. Ninth Street in Mount Carmel, Illinois, on March 24 and April 7 of 2022. He identified the photographs he took of a bathroom located at the southeast corner of the residence and the photographs he took of a bathroom situated off a northeast bedroom in the same residence. The court admitted the photographs into evidence. The court also admitted into evidence the Joint exhibit No. 3A, which was the police interview of defendant.

¶ 22    On cross-examination, Sergeant Johnson testified that he photographed the bathrooms because the police believed they were the location of some of the images found on defendant's phone that did not have a face in them. He agreed that the secured file contained pornographic and nonpornographic photographs and that some of the photographs in the secured file were apparently from a commercial or other source. Counsel asked if there was some adult pornography in the secure file. Sergeant Johnson replied, "There was one particular image that appeared like I guess what we would call a meme of a man with what looked like a rag over a woman's face." Counsel again asked if there was adult pornography in the file, and Sergeant Johnson answered affirmatively.

¶ 23    Ashley Covalt, the ex-wife of defendant, testified that she had three children. Her two youngest children were defendant's children and her oldest child, B.G., had a different father. She and defendant married in 2011, when B.G. was almost two years old. They lived in various locations, but in August 2014, they moved to 327 East Ninth Street, Mt. Carmel, Illinois. She testified that residence was close to Cherry Street, and her children always called the residence "the Cherry Street house." From September 2017 to May 2021, they moved to 510 West First Street, Mt. Carmel, Illinois. B.G. lived with them throughout this time. Ashley stated that there were times when defendant would be alone with B.G. when Ashley worked the day shift.

¶ 24    Ashley testified that the Ninth Street (or Cherry Street) house had one and a half baths and three bedrooms. She stated that the State's photographs of the bathrooms in the Ninth Street house looked exactly the same as when she lived at that residence, including the countertops. Ashley identified State exhibit No. 4 as a photograph of B.G.'s Def Leppard T-shirt. Defendant's aunt bought B.G. the shirt as a gift in 2018 or 2019 when they lived in the Ninth Street house. Ashley testified that she tried looking for that shirt but was unsuccessful and the photograph depicted the exact same shirt that was gifted to B.G. The court admitted State's exhibit No. 4 into evidence.

¶ 25    Ashley stated that defendant liked rock and metal music and had clothing that depicted his favorite bands. She further stated that defendant was a fan of Flames and Avenged Sevenfold, and he owned T-shirts for both bands. Ashley identified the person shown in Joint exhibit No. 1B as B.G.

¶ 26    Ashley stated that B.G. had a party for her eleventh birthday at the First Street house. Ashley's mom, sister, sister's boyfriend, and friend's family attended the party. B.G.'s friend, M.B., also attended the party and stayed the night. Ashley went to bed before the girls. She stated that the back bedroom—which had a washer and dryer in it—and one bathroom were on the

9

opposite end of the house from her bedroom. As such, it was possible that she could be in her bedroom and not know if someone was in the bathroom.

¶ 27    Ashley testified that on May 25, 2021, she went through defendant's phone and found photographs and a video, which prompted her to call the police. She provided the phone to law enforcement. She stated defendant had the phone for about a year.

¶ 28    B.G. testified that her birthday was December 12, 2008. She currently lived with her aunt but previously lived with her mom at the First Street house. She was nine when they moved into that house. Prior to that, she lived in the Cherry Street house (Ninth Street house). At both houses, she lived with defendant, her sisters, and her mom. She stated there were times defendant was alone with her while her mom was at work.

¶ 29    B.G. stated that she remembered her 11th birthday party and that M.B. stayed the night. When her mom went to bed, defendant was alone with B.G. and M.B. B.G. testified that defendant recorded them because "he wanted some photographs to send to her mom" and that he cut up a shirt for M.B. Defendant used his phone to take the photographs and did not show the photographs to B.G.

¶ 30    B.G. testified that defendant took photographs of her "privates" on another occasion while her mom was at work. This occurred either in the First Street house or the Cherry Street house. B.G. stated she owned a red Def Leppard shirt but could not remember when she received the shirt. B.G. testified that Joint exhibit No. 1b was a photograph of her. Based on the countertop, the photograph was taken in the bathroom with a tub at the Cherry Street house.

¶ 31    M.B. testified that her date of birth was March 23, 2009. She lived with her grandmother in Mt. Carmel from the beginning of 2018 until mid-2020. During that time, she was friends with

10

B.G. She visited B.G. at her home on First Street two or three times. M.B. first stayed at B.G.'s house after B.G.'s birthday party.

¶ 32 M.B. testified that after the party and when Ashley went to bed, defendant was alone with her and B.G. Defendant told B.G. to take a bath and encouraged M.B. to take a bath with her. After the bath, defendant washed their clothes, so B.G. wore one of her shirts, and defendant put M.B. in one of his shirts. M.B. further testified that when they were eating leftover cake in the kitchen, defendant used a pair of orange scissors to cut the sleeves of the shirt off to the ribcage area and cut the bottom half of the shirt above her bellybutton. Defendant said the shirt would look cute cut. M.B. was completely naked while defendant cut the shirt. After defendant cut the shirt, M.B.'s pubic area and buttocks were visible. They all went into the bedroom and were eating cake when B.G. and defendant told M.B. how B.G. would sometimes put her knees over defendant's shoulders and sit-up to look face to face. Defendant had the girls put on underwear and they both competed in doing sit-ups on defendant in this fashion. After they were done, defendant made the girls take off their underwear. They then sat around and talked for a couple of hours. M.B. testified that defendant used his phone to take photographs of her and B.G while he instructed them. She stated that the photographs were taken in the bedroom and one may have been taken in the kitchen. M.B. never saw the photographs. She stated that B.G.'s room had wood paneling on the walls and a washer and dryer in it. When defendant took the clothes out of the dryer, he went to bed, and the girls slept in the living room. M.B. had shorts on at that time.

¶ 33 The State presented a joint stipulation of facts and stipulation to admissibility that was signed by the State and defense counsel. The stipulation of facts provided that the parties agreed the following fact to be true:

"1. On or about May 25, 2021, Ashley Covalt, then wife of Defendant Chad Covalt, found photographs on the personal cellular phone of Defendant in a secure folder.

2. On or about May 25, 2021, Ashley Covalt reported to the Mt. Carmel Police department that she had located photographs depicting the nude vaginas of two minor children on the personal cellular phone of Defendant and turned over a cellular telephone to the Mt. Carmel Police Department which she identified as the personal cellular phone of Defendant Chad Covalt, being a black Samsung Telephone in a blue and gray Otterbox case ***.

3. On May 25, 2021, Defendant was interviewed by Eddie Johnson, a law enforcement officer of the Mt. Carmel Police Department, and admitted to taking photographs and video of the nude bodies of [B.G.], date of birth December 12, 2008, and [M.B.] date of birth March 23, 2009.

4. On or about May 26, 2021, pursuant to a Search Warrant, officers of the Mt. Carmel Police Department searched said cellular phone and, in a secure folder, *** found the files appearing on the usb flash drive labeled Joint Exhibit 2. Those files are not exhaustive, for the searching officer located other files in the same location of the phone which were not responsive to the Search Warrant."

¶ 34    The stipulation of facts further stated:

"6. The folder names and file names appearing on Joint Exhibit 2 are folder names and file names created by law enforcement to categorize their findings and are not folder names and file names that appeared on the phone of the Defendant nor are they names created by

12

the Defendant. Defendant does not stipulate that all files or folders with a particular set of initials contain photographs of the minor identified by those initials."

¶ 35     The stipulation also explained which files located on Joint exhibit No. 1 were associated with which counts of child pornography in the charging instrument. It further averred that, in the videos and photographs, B.G. was the girl with blonde hair in a shirt bearing the words "In Flames" and M.B. was the girl with brunette hair in a black cropped shirt bearing the words "Avenged Sevenfold."

¶ 36     The stipulation to admissibility stated that the parties agreed to admit into evidence the USB flash drive labeled Joint exhibit No. 1, the USB flash drive labeled Joint exhibit No. 2, the Guardian Center interview of B.G. found in Joint exhibit No. 3b on the USB Flash drive labeled Joint exhibit No. 3, the Guardian Center interview of M.B. found in Joint exhibit No. 3c on the USB Flash drive labeled Joint exhibit No. 3, and the recorded police interview of defendant found in Joint exhibit No. 3a contained in the USB flash drive labeled Joint exhibit No. 3. It also noted that defendant's sole objection to admissibility of the files in Joint exhibit No. 1 were the reasons stated in his motion to suppress. The State also requested the admission of Joint exhibit No. 1.

¶ 37     Defense counsel stated,

"I do want to say for the record as to the stipulation of facts, obviously it's counsel's decision how to present evidence. But in light of the fact that this stipulation does effectively stipulate elements, I would not feel that that [*sic*] was my prerogative without the agreement of my client. And he certainly is agreeable to that and wanted to do things in a way that would be least difficult, particularly for the girls."

¶ 38     The court asked defendant if counsel was correct, and defendant answered affirmatively. The court then admitted Joint exhibit No. 1. Upon request from the State, the court also admitted

13

Joint exhibit No. 2, Joint exhibit No. 3b (Guardian Center interview of B.G.), and Joint exhibit No. 3c (Guardian Center interview of M.B.). The State rested.

¶ 39    The court discussed defendant's right to testify, and defendant stated he did not wish to testify. The defense then rested. After a recess, during which the court reviewed defendant's police interview and Guardian Center interviews of both victims, the court found defendant guilty of all child pornography charges. In doing so, it noted it "reviewed all of the evidence, the case law and statutes and adopts all previous findings and orders."

¶ 40    On May 9, 2022, defendant filed a motion for a new trial, arguing that the court erred in denying defendant's motion to quash and suppress, the court erred in denying defendant's amended motion to dismiss, and the State failed to prove defendant guilty beyond a reasonable doubt. On May 23, 2022, the court held a hearing on the motion. Defense counsel argued that the issues raised in the motion were previously raised in other contexts and he relied on his previous arguments. After the court confirmed there were no new or additional arguments, it denied the motion.

¶ 41    The court then proceeded to the sentencing hearing. The parties confirmed there were no additions or corrections to the presentence investigation report. The State presented the written victim impact statements from M.B. and B.G. The court read aloud B.G.'s statement, pursuant to her wishes. M.B. asked the court to read her statement privately. The defense presented no evidence.

¶ 42    The State argued that the applicable factors in aggravation were (1) the actions of the defendant caused or threatened serious harm; (2) defendant had a prior criminal history; (3) necessity to deter others from committing the same crime; and (4) defendant held a position of trust or supervision to both victims. The State averred that sentences for all counts were

14

mandatorily consecutive, pursuant to section 5-8-4(d)(2.5) of the Unified Code of Corrections (730 ILCS 5/5-8-4(d)(2.5) (West 2020)). It noted section 5-8-4(f)(2) (*id.* § 5-8-4(f)(2)) limited the maximum aggregate sentence to the maximum term of the two most serious felonies for a single course of conduct during which there was no substantial change in the nature of the criminal objective. The State contended that counts IV through VI and VIII through XXII concerned videos and photographs taken in December 2019 and that counts VII and XXIII through XXXII were photographs taken on another occasion when B.G. lived in the Ninth Street house. It argued the separation of time and settings, and the fact that there is an additional victim in the other set of photographs/videos, supports that there were two separate courses of conduct involved here. As such, the State argued that the court could sentence defendant to the two maximum terms for child pornography on one course of conduct and another two maximum terms on the other course of conduct. The State requested the court to sentence defendant to a total of 120 years.

¶ 43    Defense counsel, in addressing the maximum consecutive terms, argued that all the charges were one course of conduct where the photographs were discovered on the same phone and depicted the same two individuals. Counsel also contended one-act, one-crime principles applied to counts IV through VI, VIII through XVIII, and XX through XXII, where they all appear to be the same video or clips from the same video. As such, defendant should be sentenced for only one of those counts. Counsel argued that defendant's criminal history was fairly limited. He also noted that there was no evidence that anyone, other than defendant, had ever possessed the photographs. Counsel stated, "Under the circumstances, we would ask again, as to the counts I'd indicated earlier, that sentence be entered on only one of those, that, otherwise, even consecutive minimums are going to result in an extremely high number." Defendant declined to make a statement in allocution.

15

¶ 44    The court stated that it considered the factual basis; trial evidence; presentence investigation report; history, character, and attitude of defendant; the statutory factors in aggravation and mitigation; and arguments. With respect to the aggravating factors, the court found defendant's conduct caused serious harm, defendant had a criminal history, the sentence was necessary to deter others from committing the same crime, and defendant held a position of trust or supervision. The court noted that, pursuant to section 5-8-4(d), it was required to impose mandatory consecutive terms for the offenses. It found that because the maximum sentence for child pornography was 30 years' imprisonment and section 5-8-4(f)(2) limited the maximum consecutive terms to the two most serious felonies in one course of conduct, defendant faced a maximum of 60 years' imprisonment for each course of conduct. It found there were at least two courses of conduct. Counts IV through VI, VIII through XVIII, and XX through XXII were one course of conduct, and counts VII, XIX, XXIII and XXXII were another course of conduct. It found no factors in mitigation. As such, the court imposed a maximum aggregate term of 60 years for each of the two courses of conduct for a total of 120 years' imprisonment.

¶ 45    On May 31, 2022, defendant filed a motion to reconsider, arguing that the court erred in entering judgment and sentence on multiple counts which were based on the same act, finding the charges were based on more than one course of conduct, and imposing an excessive sentence of 60 years. On the same day, the court denied the motion after a hearing on the matter.

¶ 46    On June 7, 2022, the court filed the judgment, which showed defendant was sentenced to 60 years for counts IV-VI and VIII-XXII and 60 years for counts VII and XXIII-XXXII, to be served consecutively. Defendant appealed.

¶ 47                                    II. ANALYSIS

¶ 48    On appeal, defendant raises numerous issues regarding his conviction and sentence. We address each in turn.

¶ 49                                    A. Speedy Trial

¶ 50    Defendant first argues that the 25 additional child pornography counts, filed on December 29, 2021, violated his speedy trial rights. Defendant contends that because those 25 charges were new and additional charges subject to compulsory joinder, the speedy trial term on the new charges began when defendant was arrested and the original counts were filed on May 27, 2021. He further contends his agreed continuances, made prior to the filing of the additional charges, could not toll the speedy trial clock for the additional charges.

¶ 51    The State argues that the agreed continuances tolled the additional charges for speedy trial purposes where the original charging document gave defendant sufficient notice and he was able to adequately prepare his defense on the additional charges. The trial court agreed with the State and found the charges were based on the same act but were not "new and additional" for purposes of compulsory joinder. We affirm on different grounds. See *People v. Smallwood*, 2024 IL App (5th) 210407, ¶ 16 ("We may affirm for any basis in the record.").

¶ 52    A defendant possesses both a constitutional and statutory right to a speedy trial. *Gooden*, 189 Ill. 2d at 216. Defendant here limits his argument to the statutory right to a speedy trial.

¶ 53    The speedy trial statute provides, "Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he or she was taken into custody unless delay is occasioned by the defendant ***." 725 ILCS 5/103-5(a) (West 2020). "A defendant not tried within the statutory period must be released from his trial obligations

17

and have the charges dismissed." *People v. Hunter*, 2013 IL 114100, ¶ 10 (citing 725 ILCS 5/103-5(d), 114-1(a)(1) (West 2008), and citing *People v. Woodrum*, 223 Ill. 2d 286, 299 (2006)).

¶ 54 When a case involves a single offense, application of the speedy trial statute is straightforward. *Williams*, 204 Ill. 2d at 198. However, when the State charges multiple, factually related offenses at different times, application of the speedy trial statute becomes more complicated, as it is "tempered by compulsory joinder principles." *Id.*

¶ 55 The compulsory joinder statute requires all charges—based on the same act—to be prosecuted in a single prosecution if the offenses were known to the prosecution and are within the jurisdiction of the same court. 720 ILCS 5/3-3(b) (West 2020). The Illinois Supreme Court has explained that all charges subject to compulsory joinder are subject to the same speedy trial period. *People v. Quigley*, 183 Ill. 2d 1, 13 (1998). As such, the speedy trial period begins for all charges subject to compulsory joinder once the speedy trial demand is filed, even if the State files some charges at a later time. *Id.*

¶ 56 Here, the original charges were filed May 27, 2021. The State filed additional charges on December 29, 2021. The trial began on April 11, 2022, or 319 days after defendant was arrested. While defendant agreed to waive his speedy trial rights regarding the original charges, he did not waive his speedy trial rights to the additional charges because his waiver was prior to the filing of the additional charges. See *Williams*, 204 Ill. 2d at 207 ("If the initial and subsequent charges filed against the defendant are subject to compulsory joinder, delays attributable to the defendant on the initial charges are not attributable to the defendant on the subsequent charges."). As such, if the additional charges were subject to compulsory joinder, defendant's speedy trial rights were violated where he was not tried within 120 days of his arrest. However, if the additional charges

18

were not subject to compulsory joinder, defendant's speedy trial rights were not violated where defendant was tried within 120 days of the filing of the additional charges.

¶ 57    Defendant argues the trial court correctly found the additional child pornography charges were subject to compulsory joinder with the original charges because the additional charges were based on the same two sets of facts as the original charges. We disagree.

¶ 58    Whether the offenses were based on similar facts or conduct is not the test. See *Mueller*, 109 Ill. 2d at 386 (discussing that the legislature rejected a prior version of the compulsory joinder statute that required a single prosecution for multiple offenses arising from the same "conduct"). "There is no requirement of joinder where multiple offenses arise from a series of related acts in the course of a single incident." *People v. Baker*, 2015 IL App (5th) 110492, ¶ 81 (citing *Gooden*, 189 Ill. 2d at 219, and citing *Mueller*, 109 Ill. 2d at 385-86).

¶ 59    Rather, compulsory joinder is applicable only to charges *based on the same act*. 720 ILCS 5/3-3(b) (West 2020); *Mueller*, 109 Ill. 2d at 385. " 'The same act' is designed to describe the situation in which several persons are affected by only one act of the defendant, such as *** the stealing, in a single container, of several articles of property belonging to different persons; or violating by one act two different statutory provisions." (Internal quotation marks omitted.) *Hunter*, 2013 IL 114100, ¶ 18. Another example is "where more than one person was injured by a single act of the accused, such as setting off an explosive." *Mueller*, 109 Ill. 2d at 386.

¶ 60    The Illinois Supreme Court has determined that the compulsory joinder statute is not required in situations "in which several offenses—either repeated violations of the same statutory provision or violations of different provisions—arise from a series of acts which are closely related with respect to the offender's single purpose or plan." (Internal quotation marks omitted.)

19

*Williams*, 204 Ill. 2d at 199. The "same act" does not include "independent, overt acts that constitute different offenses." *Gooden*, 189 Ill. 2d at 219-20.

¶ 61    Here, the act giving rise to child pornography in this case was either filming, photographing, or reproducing. See 720 ILCS 5/11-20.1(a)(1)(vii) (West 2020). While the additional counts concern photographing during a similar time as the original child pornography counts or reproduction of the filming that was the basis for some of the original child pornography counts, each count was premised on a separate filming, photographing, or reproduction of the victims.

¶ 62    Defendant's argument is essentially that all counts stemmed from two occasions where the photographs or films were taken close in time. As we noted above, closely related acts in a single incident do not require compulsory joinder. *Baker*, 2015 IL App (5th) 110492, ¶ 81 (citing *Gooden*, 189 Ill. 2d at 219, and citing *Mueller*, 109 Ill. 2d at 385-86). We acknowledge that the Illinois Supreme Court has advised it "has not given the phrase 'based on the same act' a hypertechnical interpretation to create multiple acts based on discrete moments in time. Joinder is required where the defendant is engaged 'in only one continuous and uninterrupted act.' " *Hunter*, 2013 IL 114100, ¶ 18 (quoting *Quigley*, 183 Ill. 2d at 11). Examples of one continuous act for the purpose of compulsory joinder are the simultaneous possession of two different contraband (*id.* ¶ 19) and multiple offenses based on the continuous uninterrupted act of driving while under the influence (*Quigley*, 183 Ill. 2d at 11).

¶ 63    We do not find the acts underlying the offenses here are similar to simultaneous possession or a continuous act. Rather, defendant repeatedly photographed or filmed the victims within a short period, which created numerous individual photographs and videos. The fact that defendant photographed or videoed the victims within a short period does not equate to the act being

20

continuous. Moreover, defendant and the State agree that many of the additional charges were based on reproductions of the film that were the basis for three of the original charges. There is no indication that the reproduction of film occurred the same night the film was taken. Defendant's acts were therefore repeated violations of the same statutory provision, based on a series of acts that were closely related with a single purpose and therefore not subject to compulsory joinder. See *Williams*, 204 Ill. 2d at 199. Accordingly, defendant's speedy trial rights were not violated by the additional charges. Each production is related in that they took place within a similar time frame and depicted the same children, but each production did not arise from the same act.

¶ 64                                B. Sufficiency of the Evidence

¶ 65    Defendant next argues that the State failed to prove the offenses beyond a reasonable doubt. He contends the State failed to prove (1) the element of lewdness for counts VI, VIII, XI, XII, XVIII, and XX through XXII; (2) that defendant filmed counts XIII and XIV, and photographed VII, VIII, XI, XII, XV, XVIII, XXI through XXXII; and (3) that the photographs for counts IX, XVIII, XX through XXII displayed a vagina.

¶ 66    Due process requires the State to prove each element of an offense beyond a reasonable doubt. U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, § 2; *In re Winship*, 397 U.S. 358, 364 (1970). When reviewing the sufficiency of the evidence, it is not our function on review to retry defendant or "substitute our judgment for that of the trier of fact." *People v. McLaurin*, 2020 IL 124563, ¶ 22. Rather, we must determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Rudd*, 2012 IL App (5th) 100528, ¶ 11. In doing so, we view the evidence and reasonable inferences thereof in the light most favorable to the State. *People v. VanHoose*, 2020 IL App (5th) 170247, ¶ 24. Although not conclusive or binding on this court, we give great deference to the trier of fact's determinations

21

regarding the weight afforded to the evidence and witness credibility. *People v. Gray*, 2017 IL 120958, ¶ 35.

¶ 67    Under this standard, circumstantial evidence can be sufficient to sustain a conviction. *People v. Jackson*, 2020 IL 124112, ¶ 64. "A criminal conviction will not be set aside on a challenge to the sufficiency of the evidence unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *Id.*

¶ 68    Here, defendant was convicted of 29 counts of child pornography. As such, the State was required to prove beyond a reasonable doubt that defendant filmed, photographed, or otherwise depicted by a reproduction a child whom he knew or reasonably should have known to be under the age of 18 and the child was "depicted or portrayed in any pose, posture or setting involving a lewd exhibition of the unclothed or transparently clothed genitals, pubic area, buttocks, or, if such person is female, a fully or partially developed breast." 720 ILCS 5/11-20.1(a)(1)(vii) (West 2020).

¶ 69        1. *Lewdness for Counts VI, VIII, XI, XII, XVIII, and XX through XXII*

¶ 70    Defendant argues the State failed to prove that the images for counts VI, VIII, XI, XII, XVIII, and XX through XXII were lewd exhibitions. He contends the six factors discussed in *Lamborn*, 185 Ill. 2d 585, *People v. Lewis*, 305 Ill. App. 3d 665, 677-679 (1999), and *People v. Wayman*, 379 Ill. App. 3d 1043, 1057 (2008), weigh in favor of finding the photographs were not lewd. We disagree.

¶ 71    While such claim is framed as a sufficiency of the evidence claim, the Illinois Supreme Court has determined that whether a photograph is lewd under the child pornography statute is reviewed *de novo*. *Lamborn*, 185 Ill. 2d at 590. "Nudity without lewdness is not child pornography." *Id.* at 594. In determining lewdness, we apply an objective standard. *Id.* A defendant's intent and arousal from a photograph of video is irrelevant. *Id.* at 594-95. Instead, the

22

focus is on the intended effect to the objective viewer. *Id.* at 594. In analyzing the photographs, we must consider

> "(1) whether the focal point of the visual depiction is on the child's genitals; (2) whether the setting of the visual depiction is sexually suggestive, *i.e.*, in a place or pose generally associated with sexual activity; (3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child; (4) whether the child is fully or partially clothed, or nude; (5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and (6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer." *Id.* at 592.

¶ 72 We note the parties' arguments heavily rely on how many factors weigh for or against finding lewdness, but the determination is not so rigid. See *id.* at 592-93. Not all factors need to be present for the depiction to be considered lewd. *Id.* at 592. Rather, the focus of our analysis is "the overall content of the depiction, taking into account the age of the minor." *Id.* at 592-93. A photograph is not lewd if it is an "incidental pictures of partial nudity" or displays "uninhibited moments of adolescent spontaneity." See *id.* at 593-94.

¶ 73 While defendant challenges count VI, which was based upon Joint exhibit No. 1A, we vacate this count below due to the unit of prosecution. See *infra* ¶ 152. Accordingly, we need not address this count.

¶ 74 Count VIII was based upon Joint exhibit No. 1C, which is a photograph of both girls standing on the bed with M.B.'s bare buttocks on display. Citing *Wayman*, 379 Ill. App. at 1057, and *Lewis*, 305 Ill. App. 3d at 677-79, defendant contends that—for each disputed photograph—a photograph displaying the child's full body does not focus on the genitals. We disagree. The

23

Illinois Supreme Court found a photograph focused on the nudity although the photograph displayed three people in knee-water with a river and trees around them. *Lamborn*, 185 Ill. 2d at 595. Here, although the two girls were in the photograph, M.B.'s bare buttocks were showing and more centered in the photograph. The focus of the photograph was therefore the nudity.

¶ 75    Moreover, the photograph was in the bedroom, which is associated with sexual activity; however, we note the bed is barely seen and has no apparent sexual purpose. M.B. is facing the wall and looking back toward the camera, which has been found to be a natural pose. See *Wayman*, 379 Ill. App. 3d at 1057. However, we must keep in mind "overall content of the depiction, taking into account the age of the minor." *Lamborn*, 185 Ill. 2d at 593. Thus, the attire and actions of M.B. were also relevant. See *id.* at 596-97. M.B.'s attire is obviously inappropriate where she only wore a T-shirt that exposed her entire naked lower body and the side of her body to the top of her hips.

¶ 76    Citing *Wayman*, 379 Ill. App. 3d at 1057, defendant contends that the fact that someone is nude should not factor into whether a child is unnaturally posed. We disagree. *Wayman* cited *United States v. Villard*, 885 F.2d 117, 124 (3d Cir. 1989), in support of its statement that nudity is not part of the "criterion" for whether a child was being natural. *Villard* stated, " 'Whether nakedness itself is "inappropriate" is probably best answered not in the abstract, but with reference to the other factors present in a specific case.' " *Wayman*, 379 Ill. App. 3d at 1057 (quoting *Villard*, 885 F.2d at 124). *Villard* does not hold that nudity is not a criterion. Rather, *Villard* stands for the position that nudity is not always inappropriate and the appropriateness of nudity should be considered in light of the other factors. We agree with *Villard*. See *People v. Knebel*, 407 Ill. App. 3d 1058, 1060 (2011) (considering nudity when determining whether the victim's pose was natural).

¶ 77 We find a 10-year-old girl facing a wall and looking back over her shoulder while standing on a bed with her friend with her entire lower half being exposed is not natural. Accordingly, considering the photograph as a whole, we find it displays a lewd exhibition.

¶ 78 Count XI was based upon Joint exhibit No. 1F, which again displays both girls standing on the bed with M.B.'s entire bare buttocks on display. Unlike Joint exhibit No. 1C, M.B. is not centered in this photograph. However, she remains in the unnatural pose of standing on a bed with a friend, with her body facing the wall and her looking over her shoulder. She also is wearing the same cut-up T-shirt as in the other photographs. As such, the photograph is not an "incidental" display of partial nudity or an "uninhibited moment of adolescent spontaneity." We therefore find this photograph also displays a lewd exhibition.

¶ 79 Count XII was based upon Joint exhibit No. 1G, which also displays both girls standing on the bed with M.B.'s entire bare buttocks on display. M.B. is not centered but is still in the same unnatural pose. She also remains wearing inappropriate attire. We therefore find this photograph also displays a lewd exhibition.

¶ 80 Count XVIII and XXI were based upon Joint exhibit Nos. 1M and 1P, respectively. While the two exhibits are two separate photographs, they are similar enough such that the analysis is the same. Both photographs show both girls with M.B.'s body facing forward and her bare pubic area on display. The nudity was the focus as M.B. was centered and the photograph somewhat cuts off B.G. such that B.G.'s entire body is not showing. M.B. wearing the same cut up T-shirt as the photographs. Unlike the previous photographs discussed, M.B. was facing forward, which is not necessarily unnatural, but she was still standing on the bed next to a friend with her pubic area exposed. Considering the context of the photographs as a whole, we do not find they were an

"incidental" display of partial nudity or an "uninhibited moment of adolescent spontaneity." We therefore find these photographs displayed lewd exhibitions.

¶ 81   Count XX was based upon Joint exhibit No. 1O. In this photograph, M.B. has her arm wrapped around B.G. Both girls are centered, facing the camera, and smiling. As such, nudity is not the focus of the photograph. The girls are also naturally posed, as one might with a friend. On the other hand, both girls were wearing inappropriate attire. M.B. is wearing the same T-shirt as in the other photographs. Consequently, M.B.'s entire bare pubic area is on display. B.G. is wearing a t-shirt that goes down to her knees, but the sides are cut so long and deeply that you can see her entire side and some of the front of her body all the way until her hips. Although some of the factors are not present here, not all factors need to be present for the depiction to be considered lewd. *Lamborn*, 185 Ill. 2d at 592. "These photographs are not simply incidental pictures of partial nudity. The photographs reveal that *** the victims did not accidentally or suddenly lose their clothes." *Id.* at 595. Considering the overall content of the depiction, taking into account minors' young ages of 10 and 11, we find this photograph is also a lewd exhibition.

¶ 82   Count XXII was based upon Joint exhibit No. 1Q, which displayed both girls standing on the bed, facing the camera, with M.B.'s entire bare pubic area on display. M.B. was not centered but was wearing the same T-shirt as the other photographs. Although facing forward is not necessarily unnatural, M.B. was still standing on the bed with her friend while exposing her pubic area. Considering the context of the photographs as a whole, we do not find the photograph an "incidental" display of partial nudity or an "uninhibited moment of adolescent spontaneity." We therefore find this photograph also displayed a lewd exhibition.

¶ 83   Accordingly, we find the State proved each photograph depicted a lewd exhibition. Defendant is therefore not entitled to reversal of these counts.

26

¶ 84    2. *Defendant Filmed Counts XIII and XIV and Photographed the images for counts VIII,*

*XI, XII, XV, XVIII, XXI, and XXII*

¶ 85    Defendant next asserts that the State failed to prove that he filmed the images for counts XIII and XIV and photographed the images for counts VIII, XI, XII, XV, XVIII, XXI, and XXII, as stated in the charging instrument. He argues that the photographs or films for those counts were reproductions of the video that was the basis for counts IV, V, and VI, and therefore, the State showed he *reproduced* images, not that he filmed or photographed them. Defendant quotes *People v. Cowart*, 2017 IL App (1st) 113085-B, ¶ 42 (quoting *Fagan v. Washington*, 942 F.2d 1155, 1160 (7th Cir. 1991)), which stated the State " 'must live with the consequences of having proceeded on a theory that it could not establish with the certitude required in criminal cases.' " It also quoted *Cowart*, for the principle that "the State has complete discretion to determine the charge or charges that will be levied against a defendant. It is also the State's responsibility to ensure that the facts and the proof required to meet the burden beyond a reasonable doubt are consistent with the crime charged." *Id.* ¶ 38.

¶ 86    Defendant's argument is not that the State failed to prove child pornography but that it failed to proof the allegations of child pornography as stated in the information. Such question involves determining whether there was a fatal variance between the information and the evidence at trial. See *People v. Nitz*, 242 Ill. App. 3d 209, 220 (1993).

¶ 87    Due process requires that the charging instrument apprises a defendant of the precise charged offense. *People v. Alexander*, 93 Ill. 2d 73, 79 (1982). A fatal variance between the charging instrument and proof at trial requires reversal of the conviction. *People v. Roe*, 2015 IL App (5th) 130410, ¶ 9. To be fatal, a variance "must be material and of such character as to mislead

27

the accused in making his defense or expose him to double jeopardy." *People v. Johnson*, 65 Ill. 2d 332, 337 (1976).

¶ 88 We find *Johnson* instructive. In *Johnson*, the defendant was charged with prostitution in that she "agreed to perform" specified acts. (Emphasis omitted.) *Id.* at 334-35. However, the evidence at trial showed that the defendant only "offered" to perform specified acts. (Emphasis omitted.) *Id.* at 335-36. The Illinois Supreme Court noted that the statute prohibiting prostitution provided three ways to commit the crime: (1) performing acts specified in the statute; (2) offering the specified acts; or (3) agreeing to perform the specified acts. *Id.* at 336. It found each was a separate and distinct method of violating the statute and were not interchangeable. *Id.* Thus, a variance existed. *Id.* However, the court found the variance was not fatal and did not require reversal where the defendant failed to show that she was prejudiced in presenting her defense or exposed to the possibility of double jeopardy. *Id.* at 338-39.

¶ 89 Similarly, there is more than one way to violate the specific subsection of the child pornography statute at issue here. See 720 ILCS 5/11-20.1(a)(1) (West 2020). "Filming," "photographing," and "reproducing" are all methods to violate the statute. *Id.* Thus, there was a variance. However, like the defendant in *Johnson*, defendant fails to show that he was prejudiced in making his defense. He does not claim that he would have presented different evidence or defense theory had the information used the word "reproduce" rather than "film" or "photograph." The defense's theory with respect to the specific counts cited by defendant was that the film or photographs were not lewd exhibitions. Accordingly, the distinction between "film" or "photograph" and "reproduce" did not mislead him in preparing his defense. He also is not exposed to the possibility of double jeopardy where the information names the offense and victim and the specific photograph or film was provided at trial.

28

¶ 90    Defendant further contends the State did not present any evidence that he took the photographs underlying counts VII and XXIII through XXXII (photographs of B.G. at the Ninth Street house). He notes B.G. never testified as to who took the photograph in Joint exhibit No. 1b or addressed the other photographs relating to counts VII and XXIII through XXXII. Defendant mistakenly assumes the State needed to present direct evidence that defendant photographed and filmed the relevant exhibits (*i.e.*, B.G. stating defendant took the photographs). Circumstantial evidence can be sufficient to sustain a conviction. *Jackson*, 2020 IL 124112, ¶ 64.

¶ 91    We find the circumstantial evidence sufficient to prove this element. The photographs were found in a secured file on defendant's phone. B.G. testified that defendant took photographs of her on another occasion before her birthday party. Both B.G. and her mother testified that the bathroom with the white countertop was in their previous home on Ninth Street. Also, B.G. and her mom identified B.G. in Joint exhibit No. 1b, which was the basis for count VII. B.G. also stated that the photograph was taken at the Cherry Street house. While B.G.'s position and the position of camera slightly differ in the other photographs, it is clear that the person in the photographs is wearing a red shirt and is on a white countertop similar to that in Joint exhibit No. 1b, as if they were all taken on the same day.

¶ 92    We also reject defendant's argument that reliance on Joint exhibit No. 1b would be improper propensity evidence. Other crimes or bad acts evidence is admissible to demonstrate "any other relevant fact other than propensity." (Internal quotation marks omitted.) *People v. Schofield*, 2024 IL App (4th) 220961, ¶ 78. Consideration of Joint exhibit No. 1b and the testimony related thereto could be used as substantive evidence of an element of the charged crime, *i.e.*, defendant taking the photographs. Stated another way, we do not infer that because defendant took Exhibit 1b, he was a bad person and therefore had the propensity to commit this crime. Rather, it

29

can reasonably be inferred that defendant took the photographs that were the bases for counts VII and XXIII through XXXII, based on the similarity of the victim's clothing and location of the photographs between Joint exhibit No.1b and the photographs underlying those counts. Thus, relying on Joint exhibit No. 1b and the testimony related thereto would be proper. See *People v. Ash*, 346 Ill. App. 3d 809, 814 (2004) (allowed evidence that the defendant possessed drug paraphernalia in possession of a controlled substance trial because possession of drug paraphernalia tended to prove that the defendant possessed the controlled substance, which was an element of the crime). Accordingly, considering the circumstantial evidence, we find the State proved that defendant took the photographs for counts VII and XXIII through XXXII.

¶ 93    3. *Photographs Display Vagina for Counts IX, XVIII, and XX Through XXII*

¶ 94    Defendant's last sufficiency argument asserts that the State failed to prove the photographs for counts IX, XVIII, and XX through XXII display a vagina as charged in the information. Defendant argues the exhibits corresponding to these counts depict an unclothed *pubic area*, not a vagina.

¶ 95    Defendant's argument fails for the same reasons as his argument that the State proved he reproduced several images, rather than filmed or photographed them, as stated in the charging instrument. Defendant does not contend that the State failed to prove the elements of the child pornography statute; he contends that the State did not prove the offense as charged in the information. Even if there was variance regarding the evidence at trial and the information, defendant again fails to show that he was prejudiced in presenting his defense. See *Johnson*, 65 Ill. 2d at 337 (to be fatal, a variance "must be material and of such character as to mislead the accused in making his defense or expose him to double jeopardy"). He does not claim that he would have presented different evidence or defense theory had the information use the word "pubic

30

area" rather than "vagina." Accordingly, the distinction between "vagina" and "pubic area" did not mislead defendant in preparing his defense. He also is not exposed to the possibility of double jeopardy where the specific photographs or film was provided at trial.

¶ 96                                    C. Evidentiary Errors

¶ 97    Defendant next lodges several evidentiary errors regarding the admission of the Joint exhibit Nos. 1, 2, and 3. He acknowledges that he forfeited such issues by failing to raise them in the trial court. However, he requests this court review the issues as plain error or, alternatively, argues that defense counsel was ineffective for stipulating to the admission of the exhibits.

¶ 98    Failure to object to an error and raise such error in a posttrial motion results in forfeiture of appellate review for that error. *People v. Johnson*, 238 Ill. 2d 478, 484 (2010). Forfeiture, however, is not absolute, and Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967) embodies a plain error exception to the forfeiture rule. *People v. Carlson*, 79 Ill. 2d 564, 576 (1980). "The plain-error rule bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved claims of error in specific circumstances." *People v. Thompson*, 238 Ill. 2d 598, 613 (2010).

¶ 99    Defense counsel here, however, went beyond the mere failure to raise the issues and invited any error by stipulating to their admissibility. See *People v. Harvey*, 211 Ill. 2d 368, 385 (2004). The invited error doctrine prevents a party from "complain[ing] of error which that party induced the court to make or to which that party consented." *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004). "[W]hen a defendant procures, invites, or acquiesces in the admission of evidence, even though the evidence is improper, [he] cannot contest the admission on appeal." *People v. Bush*, 214 Ill. 2d 318, 332 (2005). "To permit a defendant to use the exact ruling or action procured in the trial court as a vehicle for reversal on appeal would offend all notions of fair play [citation],

31

and encourage defendants to become duplicitous [citation]." (Internal quotation marks omitted.) *Harvey*, 211 Ill. 2d at 385. Accordingly, counsel's actions preclude any plain error analysis. *People v. Holloway*, 2019 IL App (2d) 170551, ¶ 44 (invited error precludes plain error analysis); *Harvey*, 211 Ill. 2d at 385-86.

¶ 100   However, generally, "[c]laims of ineffective assistance of counsel are not precluded by the invited error doctrine." *People v. Drew*, 2024 IL App (5th) 240697, ¶ 31 (citing *People v. Villarreal*, 198 Ill. 2d 209, 228 (2001)). The State argues that defendant should not be able to recast his alleged errors as ineffective assistance of counsel claims where he explicitly consented to the stipulations. However, we find the record shows that defendant only explicitly agreed to the stipulation of facts, and not the stipulation of admissibility. We therefore consider defendant's evidentiary arguments in the context of an ineffective assistance of counsel claim.

¶ 101   A criminal defendant has a constitutional right to effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. To determine whether counsel provided ineffective assistance, we look to the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Albanese*, 104 Ill. 2d 504, 526-27 (1984). "To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Cathey*, 2012 IL 111746, ¶ 23 (citing *Strickland*, 466 U.S. at 687). "More specifically, a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* (quoting *Strickland*, 466 U.S. at 694). "[A] defendant must establish both prongs of the *Strickland* test, such that the failure to establish either precludes a finding of ineffective assistance of counsel." *People v. Cherry*, 2016 IL 118728, ¶ 31.

32

¶ 102   In the context of this case, we must first decide whether the evidence was improperly admitted and, if so, whether the admission of such evidence prejudiced defendant. In doing so, we keep in mind that deciding what evidence to present is a matter of trial strategy that generally will not support a claim of ineffective assistance. *People v. Leeper*, 317 Ill. App. 3d 475, 482 (2000). Such allegations will be sufficient to support an ineffectiveness claim only where counsel's actions were "so irrational and unreasonable that no reasonably effective defense attorney, facing similar circumstances, would pursue such a strategy." (Internal quotation marks omitted.) *People v. Bryant*, 391 Ill. App. 3d 228, 238 (2009). To establish prejudice, "defendant must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v. Valdez*, 2016 IL 119860, ¶ 29 (quoting *Strickland*, 466 U.S. at 694).

¶ 103                                    1. *Right to be Present*

¶ 104   Defendant first argues that he was denied his constitutional right to be present at all critical stages of trial where the court reviewed Joint exhibit No. 3 in chambers. Citing *People v. Lofton*, 194 Ill. 2d 40, 72-73 (2000), he contends that he must knowingly and voluntarily waive his personal presence and counsel cannot waive it on his behalf.

¶ 105   The United States and Illinois Constitutions imply a right to be present "at all critical stages of the proceedings, from arraignment to sentencing." *People v. Lindsey*, 201 Ill. 2d 45, 55 (2002). This right is a "lesser right" intended to protect other substantial constitutional rights. *Id.* at 57; *Johnson*, 238 Ill. 2d at 487. Moreover, such right is not absolute, and the absence of defendant at a critical stage is not a *per se* constitutional violation. *Lindsey*, 201 Ill. 2d at 56-57. As such, "the right is violated only when the defendant's absence results in the loss of an underlying substantial right or in an unfair proceeding." *People v. Hood*, 2016 IL 118581, ¶ 31.

¶ 106   Defendant contends this case is similar to *People v. Lucas*, 2019 IL App (1st) 160501, ¶ 5, where after the parties stipulated to the authenticity of the video but before the video was published, the court viewed a video of the defendant's traffic stop in chambers because there was no means to watch the video in the courtroom. Defense counsel and the state's attorney also went into chambers while the judge reviewed the video, but the defendant was not present. *Id.* ¶¶ 5-6. After the court reviewed the video, it admitted the video into evidence and found the defendant guilty of battery, resisting arrest, unsafe driving, DUI, and negligent driving. *Id.* ¶ 7. In announcing its judgment, the court referred to the video. *Id.* The appellate court reversed, based on the defendant's right to be present, finding that "[t]he presentation of evidence at trial is undoubtedly a critical stage of the proceeding, and *** the video of the traffic stop involved a significant portion of the evidence against [defendant]." *Id.* ¶ 15. The appellate court further found that the defendant's absence affected "at least one fundamental right—to testify in her own defense." *Id.* ¶ 19. It explained that to make an informed decision on whether to testify or not, the defendant "must be aware of *all* of the State's evidence," and the record did not show that the defendant knew the entire contents of the video. (Emphasis in original.) *Id.* ¶¶ 19-20.

¶ 107   *Lucas* differs from this case in that the videos here were admitted into evidence before the court reviewed them outside the presence of defendant. There is a split on whether *Lucas*'s rationale should be extended to cases presenting similar circumstances as the present case. Some courts have found a court reviewing admitted evidence outside the presence of the defendant does not violate the right to be present because the reviewing of admitted evidence is not a "hearing" or "proceeding." See *People v. Maniwa*, 2021 IL App (4th) 190796-U, ¶ 31; *People v. Aquisto*, 2022 IL App (4th) 200081, ¶ 83; *People v. Martinez*, 2021 IL App (1st) 172097, ¶ 66. Other courts, however, have found a defendant's right to be present is violated if the evidence is never published

at trial and the court only reviews the evidence outside the presence of the defendant. See *People v. Flagg*, 2021 IL App (1st) 191692-U, ¶¶ 48, 51; *People v. Villa*, 2023 IL App (1st) 210352-U, ¶ 66. We need not decide the issue because defendant fails to show the requisite prejudice. See *People v. Johnson*, 372 Ill. App. 3d 772, 777 (2007) ("Where a defendant fails to satisfy *Strickland*'s second prong by failing to show prejudice, the reviewing court need not determine whether *Strickland*'s first prong of deficient performance has been met.").

¶ 108   Joint exhibit No. 3 includes three video-taped interviews: B.G.'s Guardian Center interview, M.B.'s Guardian Center interview, and defendant's police interrogation. We find defendant was undoubtedly aware of his police interrogation video, as he was present for that interview. *Aquisto*, 2022 IL App (4th) 200081, ¶ 84; *People v. Ortiz*, 2023 IL App (1st) 211307-U, ¶ 76; *People v. Hamlin*, 2023 IL App (1st) 221362-U, ¶ 56. However, he is correct in that nothing in the record indicates that he viewed the interviews of the victims.

¶ 109   Nevertheless, while defendant here cited the general principle that the right to be present ensures various substantial rights in his opening brief, unlike the defendant in *Lucas*, he fails to explain how unfairness resulted from the court reviewing those videos without his presence or which of his substantial rights was violated in his opening brief. See *People v. Groebe*, 2019 IL App (1st) 180503, ¶ 52 ("There is no argument or anything to suggest the trial court's procedure prejudiced defendant's ability to aid in her defense or to decide whether to testify."). There is also no indication that the court relied on the Guardian Center interviews "as forming an independent basis for its judgment." *Id.* Moreover, as the *Lucas* court noted, the right to be present is rooted in the confrontation clause. *Lucas*, 2019 IL App (1st) 160501, ¶ 15. Here, both B.G. and M.B. testified at trial, and defense counsel had the opportunity to cross-examine both witnesses. *Groebe*, 2019 IL App (1st) 180503, ¶¶ 51-52 (declining to find the defendant's absence from the video

viewing caused the proceedings to be unfair or resulted in the denial of an underlying substantial right, including the right to confront witnesses where the witness testified and the defendant had the opportunity to confront and cross-examine them). In his reply brief, defendant argues that had he been aware of the contents of the victims' interviews, he might have testified. However, defendant cannot raise new arguments in his reply brief; thus, such argument is forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."). Defendant therefore failed to prove the requisite prejudice from any violation of his right to be present, which also means he failed to prove prejudice for any ineffective assistance of counsel claim. See *Jackson*, 2020 IL 124112, ¶ 91 (if an error does not amount to reversible error, any action of counsel in causing the error would not prejudice defendant); *People v. Kite*, 204 Ill. App. 3d 955, 960 (1990) (counsel's actions do not prejudice defendant under *Strickland* if the alleged error is found harmless).

¶ 110                    2. *Relevancy of 10 Images in Joint Exhibit No. 2*

¶ 111   Defendant next argues that the following exhibits were irrelevant and should not have been admitted into evidence: (1) Joint exhibit Nos. 2-01-21 and 2-01-22, which are photographs of B.G. and M.B. from the waist up and the girls are smiling; (2) Joint exhibit No. 2-01-23, which is a photograph of defendant's camera roll that shows a photograph of an adult man's bare back, a Christmas tree with presents, three smiling girls, B.G. and M.B. smiling, and a screenshot of a social media website; (3) Joint exhibit No. 2-03-01, which is a photograph of a part of a young girl's face; (4) Joint exhibit No. 2-03-04, which is a recording of two different videos depicting a girl dancing; (5) Joint exhibit Nos. 2-04-01 through 2-04-03, which were photographs of text messages; and (6) Joint exhibit No. 2-05-01, which were text messages between defendant and Stephanie Hazlett; and (7) Joint exhibit No. 2-07-02, which is a meme of a man and woman on a

36

bed with the man holding a cloth over the woman's face and the caption stating, "Chloroform; putting the sensual back in non-consensual." Defendant contends there was no evidence that these images were on his phone at the time of his arrest, and the State offered no context for the innocuous images and videos.

¶ 112   Irrelevant evidence is inadmissible. Ill. R. Evid. 402 (eff. Jan. 1, 2011). " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ill. R. Evid. 401 (Jan. 1, 2011).

¶ 113   We find defendant's ineffectiveness claim regarding this argument fails because, assuming *arguendo* that the 10 exhibits were irrelevant and counsel should have objected to their admission, defendant was not prejudiced. See *People v. Johnson*, 2021 IL 126291, ¶ 53 (a court may reject an ineffectiveness claim based on a lack of prejudice without considering whether counsel provided deficient representation). In a bench trial, we presume " 'the trial court considered only admissible evidence and disregarded inadmissible evidence in reaching its conclusion.' " *People v. Smart*, 2025 IL 130127, ¶ 94 (quoting *People v. Naylor*, 229 Ill. 2d 584, 603 (2008)). The presumption is rebutted only "where the record affirmatively shows the contrary." (Internal quotation marks omitted.) *Id.* "Unless the record affirmatively rebuts that presumption, any error related to inadmissible evidence is not reversible." *People v. Burton*, 2012 IL App (2d) 110769, ¶ 15 (citing *Naylor*, 229 Ill. 2d at 603-05).

¶ 114   Defendant here cites nothing in the record, nor have we found anything in the record, to rebut the presumption that the court considered only admissible evidence in finding him guilty. While the court did not detail its reasons for finding defendant guilty, there is no indication in announcing its judgment or otherwise indicating it considered the irrelevant evidence in making

37

its decision. Moreover, the fact that the parties stipulated to the admissibility of the exhibits does not indicate that the court considered all of the stipulated exhibits as properly admitted evidence. See *Smart*, 2025 IL 130127, ¶¶ 100-04 (finding the error in allowing the stipulation of evidence that defendant slapped a minor boy's buttocks was harmless where the record failed to rebut the presumption that the court considered only admissible evidence). As such, we presume the court only considered the admissible evidence. Moreover, the evidence here was overwhelming. Defendant admitted taking nude photographs of the minors, both girls testified consistently as to defendant's wrongdoings, the photographs were found on his phone in a secure folder, and the photographs clearly displayed the minors in a lewd depiction (see *supra* ¶¶ 74-82).

¶ 115   Therefore, we find the admission of such evidence did not harm defendant and the exclusion of this evidence would not have changed the court's finding of guilt. Accordingly, defendant's ineffective assistance of counsel claim on this basis fails. See *People v. Reber*, 2019 IL App (5th) 150439, ¶ 86 (no prejudice where defendant elected a bench trial, child pornography was found on defendant's work laptop, the victim identified herself in the pornography, and other witnesses identified defendant's bathroom as the scene of one video).

¶ 116                   3. *Other Crimes and Bad Acts Evidence*

¶ 117   Defendant argues that the court erred in admitting several pieces of evidence of other bad acts. We address each in turn and provide a detailed description of such evidence below.

¶ 118   Illinois Rule of Evidence 404(b) (eff. Jan. 1, 2011) provides, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity ***." "The rationale for this rule is not that a defendant's bad character, as evinced by other bad acts, is irrelevant when he is charged with a crime." *People v. Dabbs*, 239 Ill. 2d 277, 284 (2010). Such evidence is admissible to prove a fact in issue, rebut an alibi defense, demonstrate

consciousness of guilt, or establish motive, intent, absence of mistake or accident, identity, *modus operandi*, or a common design or scheme. *People v. Ingram*, 389 Ill. App. 3d 897, 901-02 (2009).

¶ 119   We first find that not all the complained of evidence constituted bad acts. Specifically, defendant asserts the text messages between M.B.'s mother, Stephanie Hazlett, and him were improper other bad acts, but the texts are nothing more than a friendly conversation between the two. Stephanie thanked defendant for allowing M.B. over at his house and bringing her home. In response, defendant thanked Stephanie for allowing M.B. to come over. He further stated that M.B. was a "wonderful little girl" and his favorite of B.G.'s friends. Such conversation does not cast defendant in a negative light or constitute evidence of defendant's bad behavior.

¶ 120   Defendant also argues M.B.'s statements that he offered to take her in when she did not get along with her family was evidence of other bad acts. We disagree. In hindsight, while the evidence at trial (*i.e.*, defendant taking nude photographs of M.B.) may imply defendant had an ulterior motive in offering to take M.B. in, the offer itself is not nefarious and does not indicate bad behavior.

¶ 121   Defendant further contends that a meme found on his phone that makes light of using chloroform on a woman for a sexual purpose and a video found on his phone that showed adult pornography in the last two seconds were other bad acts evidence. While this evidence may imply a fantasy and preference for porn, it is not evidence of another crime or defendant's prior bad act. See *People v. Tugnon*, 2021 IL App (5th) 180384-U, ¶¶ 37, 39 (pornography depicting others taking advantage of women while sleeping was not evidence of a crime).

¶ 122   Admittedly, however, defendant cites several instances of prior bad acts and crimes that were inadmissible under the evidence rules. This included allegations in prior DCFS cases, use of opiates, other compromising photographs of young girls, text messages indicating defendant was

39

a pedophile, M.B. repeatedly calling defendant creepy, M.B. observing defendant touching B.G.'s breasts, defendant allowing B.G. to de-pants him, and B.G.'s accusations that defendant had sexually abused her. Defendant also challenges other bad acts that occurred the same night that defendant took a video and photographs of both victims. These instances included making the victims take a bath together while defendant watched, the victims doing sit-ups on defendant's shoulders then his instructing them to take their underwear off, and defendant cutting M.B.'s shirt, which arguably could be properly admitted as the circumstances around this crime. See *People v. Hale*, 2012 IL App (1st) 103537, ¶ 14 ("Evidence of other crimes may be admissible where it 'set[s] the stage' for the charged offense and explains circumstances about the charged offense that might appear improbable.").[1]

¶ 123　Nevertheless, similar to arguments addressed above, defendant fails to show any prejudice where the record does not rebut the presumption that the court did not consider the improper evidence. Like the irrelevant evidence previously discussed, nothing in the record indicates that the court considered this information in finding defendant guilty. As such, we presume the court considered only admissible evidence in its determination. The evidence supporting guilt was also significant. Accordingly, defendant cannot establish he was prejudiced by counsel's stipulation to the admissibility to the evidence.

---

[1]Defendant also argues that none of the other bad acts evidence was admissible under section 115-7.3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-7.3 (West 2020)), which allows evidence of other sex offenses as propensity evidence if certain requirements are met. He contends that because the State did not request the admission of such evidence, the trial court had no opportunity to weigh the probative value against the prejudicial nature, as required by section 115-7.3 (*id.*), and none of the evidence met section 115-7.3's admissibility requirements. The State does not contend any of the evidence was admissible under section 115-7.3. Because we find defendant failed to show prejudice on another basis, we need not address this argument.

¶ 124                    4. *Illinois Rule of Evidence 1003*

¶ 125   Defendant next contends that Joint exhibit Nos. 1 and 2 violated Illinois Rule of Evidence 1003 (eff. Jan. 1, 2011). We first note that while defendant asserts the Joint exhibit Nos. 1 and 2, as a whole, should not have been admitted, his argument is limited to a few photographs and videos within those exhibits. As such, we only address whether counsel was ineffective for stipulating to the admission of the specific photographs and videos cited by defendant.

¶ 126   Specifically, defendant asserts all the exhibits were duplicates where the evidence submitted was videos and photographs taken by Detective Johnson of the videos and photographs on defendant's phone. He argues that the last two seconds of Joint Exhibit 1I, a video of an officer accessing and playing a video on defendant's phone then exiting out of the video, was irrelevant and prejudicial because it showed that defendant had adult pornographic images on his phone. He also contends that Joint exhibit Nos. 1M and 1P, the photographs for counts XVIII and XXI, look very similar. He argues because Joint exhibit Nos. 1M and 1P were duplicates of the photographs on his phone, it was difficult to tell if those photographs were the same photographs or merely similar photographs. He argues the same regarding Joint exhibit Nos. 1X and 1Y, which were the bases for counts XXIX and XXX. Defendant contends that multiple copies of a photograph that are identical to each other do not constitute single and separate violations under the child pornography statute (720 ILCS 5/11-20.1(a-5) (West 2020)). As such, he contends that for the charges based on Joint exhibit Nos. 1P and 1Y, he was either improperly convicted twice for taking one photograph under the one-act, one-crime doctrine or improperly charged for creating a copy. Thus, the admission of the duplicates was unfair.

¶ 127   The State argues that Joint exhibit No. 1I did not omit any material from the original video and was not altered in any way, and as such, it fails to implicate the fairness analysis under Rule

41

1003(2). The State also contends that Joint exhibit Nos. 1M, 1P, 1X, and 1Y are photographs capturing a different moment in time, as evidenced by a visible change in the position and shadow of M.B.'s hand with the blue wristband and a shift in B.G.'s body position demonstrated by a change in the visibility of the white counter.

¶ 128    Rule 1003 allows a duplicate to be admissible "to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." Ill. R. Evid. 1003 (eff. Jan. 1, 2011). Defendant here does not contest the authenticity of any exhibit; rather, he contends the admission of five exhibits were unfair.

¶ 129    Defendant's argument of unfairness is premised on violations of other legal principles (*i.e.*, relevancy and one-act, one-crime doctrine). We already found defendant failed to prove his ineffectiveness claim regarding the relevancy of Joint Exhibit 1I. See *supra* ¶¶ 111-14. His ineffective assistance of counsel claim regarding the unfairness of Joint exhibit No. 1I under Rule 1003, based on relevancy, therefore also fails.

¶ 130    We further find defendant's claim regarding Joint exhibit Nos. 1M, 1P, 1X, and 1Y also unpersuasive. While the photographs look similar, a review of the photographs reveals differences clarifying that the exhibits show different photographs, rather than duplicates of the same photograph. In Joint exhibit Nos. 1M and 1P, there are noticeable differences in the placement of one of M.B.'s hands. Also, the shadow of M.B.'s body on the wall behind her differs. There are also sufficient differences seen between Joint exhibit Nos. 1X and 1Y, based on both the background fixtures and M.B.'s genitalia. As such, we find the exhibits clearly show different photographs. Accordingly, because the exhibits clearly show different photographs, the admission of the duplicates was fair and counsel was not ineffective for failing to challenge the exhibits on

this basis. See *People v. Bradford*, 2019 IL App (4th) 170148, ¶ 14 ("defense counsel will not be deemed ineffective for failing to make a futile objection" (internal quotation marks omitted)).

¶ 131                                    4. *Cumulative Error*

¶ 132   Defendant also argues that counsel's representation regarding the evidentiary errors, individually, negatively impacted his trial and, cumulatively, denied him a fair trial. He contends there was a total of 96 evidentiary violations, which, together, created a pervasive pattern of prejudice rendering his trial fundamentally unfair.

¶ 133   We first note that 96 evidentiary violations is a gross exaggeration. Defendant's calculation is based on his assertion that all the exhibits within Joint exhibit Nos. 1 and 2 were unfair pursuant to Rule 1003. Ill. R. Evid. 1003 (eff. Jan. 1, 2011). However, as we noted above, defendant only provided unfairness arguments for five exhibits.

¶ 134   With respect to the remaining potential errors, we determined that they were either not errors or were not prejudicial where the record failed to show the court considered any improperly admitted evidence and there was significant evidence of defendant's guilt. Accordingly, none of the claimed errors, individually or cumulatively, require reversal. See *People v. Perry*, 224 Ill. 2d 312, 356 (2007) (cumulative error analysis not necessary where "counsel's performance was not deficient or, even if deficient, did not result in prejudice under *Strickland*"); *People v. Caffey*, 205 Ill. 2d 52, 118 (2001) (reversal is not required where "no error occurred at all, or any error that may have occurred did not rise to the level of plain error").

¶ 135                                  D. Unit of Prosecution

¶ 136   Defendant argues that two counts of child pornography should be vacated because the child pornography statute defines the allowable unit of prosecution as each film and three charges of child pornography was based on the same film. Alternatively, defendant argues that because two

counts involving M.B. arose out of the same physical act of filming, he could only be convicted of one of those counts.

¶ 137   "The unit of prosecution of an offense refers to what act or course of conduct the legislature has prohibited for purposes of a single conviction and sentence." *People v. Hartfield*, 2022 IL 126729, ¶ 67. Here, we must determine whether defendant committed the offense of child pornography one or multiple times with a single filming. Such question is one of statutory construction that we review *de novo*. *People v. Carter*, 213 Ill. 2d 295, 301 (2004).

¶ 138   The primary objective of statutory construction is to ascertain and give effect to the true intent of the legislature, and all other rules are subordinate to this principle. *People v. Jamison*, 229 Ill. 2d 184, 188 (2008). "The most reliable indicator of legislative intent is the language of the statute, given its plain and ordinary meaning." *People v. Clark*, 2019 IL 122891, ¶ 20. "A court must view the statute as a whole, construing words and phrases in light of other relevant statutory provisions and not in isolation." *Id.*

¶ 139   "When interpreting a statute, a court must 'view all provisions of an enactment as a whole,' taking care not to isolate words and phrases but reading them 'in light of other relevant provisions of the statute.' " *People v. Clark*, 2024 IL 130364, ¶ 15 (quoting *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 504 (2000)). Because the relevant statute is criminal, the doctrine of lenity applies in resolving any ambiguity. *Hartfield*, 2022 IL 126729, ¶ 69. The legislature must unambiguously command "the unit of prosecution, either by an express definition, clear language, or by some unambiguous design of the offense." *Id.* ¶ 83.

¶ 140   The statute for the child pornography offense here states:

"(a) A person commits child pornography who:

(1) films, videotapes, photographs, or otherwise depicts or portrays by means of any similar visual medium or reproduction or depicts by computer *any child* whom he or she knows or reasonably should know to be under the age of 18 or any person with a severe or profound intellectual disability where such child or person with a severe or profound intellectual disability is:

\* \* \*

(vii) depicted or portrayed in any pose, posture or setting involving a lewd exhibition of the unclothed or transparently clothed genitals, pubic area, buttocks, or, if such person is female, a fully or partially developed breast of the child or other person[.]" (Emphasis added.) 720 ILCS 5/11-20.1(a)(1)(vii) (West 2020).

¶ 141    There is no express definition of the unit of prosecution in the statute. "[T]here is no question that the legislature knows how to define the unit of prosecution." *Hartfield*, 2022 IL 126729, ¶ 87 (collecting cases). While the child pornography statute provides an express definition regarding possession of child pornography (see 720 ILCS 5/11-20.1(a-5) (West 2020)), there is no such directive for a violation of the statute based on filming, photographing, and reproducing. Importantly, the legislature did not state multiple victims constitute separate violations.

¶ 142    The statute criminalizes the filming, photographing, reproducing, or portraying by a similar medium of *any* child depicting a lewd exhibition of one of the specific body parts. The Illinois Supreme Court has interpreted "any" in a statute to be ambiguous. See *Carter*, 213 Ill. 2d at 301-02. In *Carter*, the court found that the unlawful possession of a weapon by a felon statute, prohibiting possession of "any firearm or any firearm ammunition," was ambiguous as to whether possession of each firearm and of firearm ammunition constituted a separate offense or whether

45

the simultaneous possession of multiple firearms and of firearm ammunition constituted only a single offense. *Id.* at 302. It reasoned that "any" could be single or plural. *Id.* at 301-02. As such, the rule of lenity required the court to find possession of multiple firearms was a single offense. *Id.* at 306. Only after the legislature amended the unlawful possession of a weapon by a felon statute to explicitly state that possession of each firearm or ammunition was a separate violation did the court find the statute did not treat simultaneous possession as one act. See *People v. Almond*, 2015 IL 113817, ¶ 36.[2]

¶ 143    Like *Carter*, the phrase "any child" in the child pornography statute does not indicate whether the legislature meant one child or multiple children. *Carter*, 213 Ill. 2d at 301-02. Thus, under the analysis of *Carter*, it is—at most—ambiguous as to whether multiple victims in one film can support multiple convictions or one conviction.

¶ 144    The design of the offense also does not clearly delineate a unit of prosecution. We find instructive *Hartfield*, 2022 IL 126729, ¶ 91, which considered the offense of aggravated discharge. The aggravated discharge statute criminalizes firing a gun in the direction of a person or persons. See *id.* The court found that the statute makes both the discharge and the direction necessary for criminal liability. *Id.* ¶ 92. It determined "[t]he offense appears to criminalize each qualifying discharge, but it also appears to criminalize each 'in the direction of' condition that is met, *i.e.*, it appears to criminalize each instance of a person, building, or vehicle being in the direction of

---

[2]*Carter* is now superseded by statute due an amendment to the unlawful possession of a weapon by a felon statute that provides an explicit unit of prosecution. *Almond*, 2015 IL 113817, ¶ 39. The amendment renders *Carter*'s holding as to the unlawful possession of a weapon by a felon irrelevant because the statute now includes different language. However, the amendment did not somehow render *Carter*'s statutory interpretation analysis of the prior statute as incorrect. See *Carter*, 213 Ill. 2d at 303 (explaining that while a case was superseded by statute, the amendment did not change the holding of the case). The reasoning of *Carter* therefore remains applicable. See *Hartfield*, 2022 IL 126729, ¶¶ 82-83 (relying on *Carter* to find the number of victims does not control the unit of prosecution); *People v. McSwain*, 2012 IL App (4th) 100619, ¶¶ 58-59 (relying on *Carter* in its unit of prosecution analysis); *People v. White*, 2015 IL App (1st) 131111, ¶ 47 (same).

discharge." *Id.* As such, it found the legislature did not unambiguously outline the unit of prosecution. *Id.* ¶ 93.

¶ 145 Applying *Hartfield*'s reasoning here, we find the same. Fundamentally, the child pornography statute includes a base act (*i.e.*, filming or photographing) and the specifics that would make such act criminal (*i.e.*, lewd exhibition of "any child's" genitals, pubic area, buttocks, or breast). See 720 ILCS 5/11-20.1(a)(1)(vii) (West 2020). The filming, photographing, or other means is not punishable, without the depiction of a lewd exhibition of one of the statutorily specified body parts of any juvenile. The statute thus appears to criminalize each filming, photographing, or reproducing but also appears to criminalize each lewd exhibition of the statutorily specified body parts of any juvenile.

¶ 146 The State argues, citing *People v. Murphy*, 2013 IL App (2d) 120068, ¶¶ 5-10, that the child pornography statute addresses different concerns than that in *Hartfield*. It contends the overarching intent of the child pornography statute is to prevent child sexual abuse and exploitation, especially in light of the fact that child pornography "exacerbates the harm and abuse" suffered by victims because their actions are reduced to a recording that can easily be disseminated as part of the "mass distribution system" of child pornography. (Internal quotation marks omitted.) *People v. Geever*, 122 Ill. 2d 313, 326-27 (1988). It asserts adopting defendant's position "would turn the child pornography statute on its head" because it would mean the legislature was not focused on the victims subjected to the various acts prohibited by the child pornography statute.

¶ 147 The *Murphy* court addressed whether the possession subsection of the child pornography statute, before the amendment explicitly stating the unit of prosecution, allowed prosecution for each film or photograph possessed. *Murphy*, 2013 IL App (2d) 120068, ¶ 1. The child pornography statute at that time provided that a person who possess " 'any film, videotape, photograph or other

47

similar visual reproduction or depiction by computer of any child' '' engaged in one of the activities listed in the statute. (Emphasis omitted.) *Id.* ¶ 3 (quoting 720 ILCS 5/11-20.1(a)(6) (West 2010)). The *Murphy* court did not find the statute was unambiguous, but found the statute permitted prosecution for each videotape, photograph, or reproduction possessed, based on the statute's purpose "to protect children from exploitation by eliminating the market for such materials." *Id.* ¶¶ 4-10. It acknowledged that *People v. McSwain*, 2012 IL App (4th) 100619, ¶ 59, held that the statute was ambiguous, based on *Carter*, and thus the rule of lenity applied. *Murphy*, 2013 IL App (2d) 120068, ¶ 4. However, *Murphy* declined to apply the rule of lenity because the rule of lenity did not "require a court to construe a statute so rigidly as to defeat the intent of the legislature." (Internal quotation marks omitted.) *Id.* ¶ 5. *Murphy* reasoned, "It is difficult to fathom why our General Assembly would intend such a result amounting to what one court has referred to as a 'volume discount' for possession of child pornography." *Id.* ¶ 7. The *Murphy* court further distinguished *Carter* on this basis, noting that "the *Carter* court's application of the rule of lenity did not produce a result antithetical to the purpose of the statute." *Id.* ¶ 8.

¶ 148   While we agree that the protection of children from exploitation is of upmost importance, we must adhere to Illinois Supreme Court precedent. The State ignores, and *Murphy* did not have the benefit of, the Illinois Supreme Court directive that "the number of 'victims' does not control the unit of prosecution." *Hartfield*, 2022 IL 126729, ¶ 83. Moreover, while interpreting the statute to allow a prosecution for each child or lewd exhibition may implement the purpose of the statute to the fullest extent, we do not find interpreting the statute to allow prosecution only for each film or photograph "defeats" the intent of the legislature. "[O]ur function is not to pick what we think would be 'best' but to determine which one the people's representatives have commanded in the particular situation before us." *Id.* ¶ 86. This is done by looking "to the language of the statute to

48

determine what precisely has been prohibited by the legislature and in what unit of time, actions, or instances that crime is committed once." *Id.* ¶ 83. We cannot guess. *Id.* Any "doubt will be resolved against construing the statute as supporting multiple instances of the same offense based on the exact same act." *Id.*

¶ 149   It is possible to conclude that the unit of prosecution for the offense here depends on the number of times defendant filmed, photographed, or reproduced. It is equally possible that the unit of prosecution depends based on the number of juveniles or lewd exhibitions. As such, we cannot find the legislature unambiguously delineated the unit of prosecution. We therefore abide by our Illinois Supreme Court precedent and apply the rule of lenity to resolve the ambiguity in defendant's favor. Accordingly, a single filming, photographing, or depicting any number of juveniles by other means can sustain only one conviction.

¶ 150   In this case, counts IV, V, and VI, are based on the same single filming of M.B. and B.G. Because the single filming can only sustain one conviction, two of the three convictions should be vacated.

¶ 151   The State argues that given sentencing structure at play in this case, the trial court effectively merged the counts defendant complains of, along with others, "all [under] one course of conduct in the creation of those images." As such, it contends that defendant effectively received only one sentence for the acts involving M.B., which were contained in counts IV and V. We find the State misunderstands the record.

¶ 152   If all the counts for one course of conduct merged into one conviction, the court could not sentence defendant to a 60-year term because a 30-year term of imprisonment is the maximum penalty allowed for one conviction of child pornography. 720 ILCS 5/11-20.1(c-5) (West 2020); 730 ILCS 5/5-4.5-25 (West 2020). At the sentencing hearing, the court did not indicate if any

49

counts merged or specify on which two convictions under each course of conduct it imposed the two 30-year sentences. Similarly, the court's order sentenced defendant to a 60-year term on counts IV-VI and VIII-XXII, and another 60-year term on counts VII and XXIII-XXXII. All the convictions therefore still stand.

¶ 153   Accordingly, we vacate the convictions for counts V and VI. Because the court imposed one sentence for multiple convictions and some which were invalid, we remand to the trial court for resentencing. See *People v. Guppy*, 30 Ill. App. 3d 489, 496 (1975); *People v. Martin*, 121 Ill. App. 3d 196, 214 (1984). Because we remand for resentencing on this basis, we need not reach defendant's sentencing arguments. See *People v. Walton*, 94 Ill. App. 3d 903, 912 (1981).

¶ 154                                    III. CONCLUSION

¶ 155   Counts VII through XXXII, added after the original charges, did not violate defendant's speedy trial rights, and the State proved defendant guilty beyond a reasonable doubt. Further, defendant's right to be present claim and ineffective assistance of counsel claims regarding admissibility of evidence fail where he did not demonstrate sufficient prejudice. The unit of prosecution precluded two of his convictions. We therefore vacate two of defendant's convictions and remand for resentencing.

¶ 156   Affirmed in part and vacated in part.

¶ 157   Cause remanded.

*People v. Covalt*, 2025 IL App (5th) 220346

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Wabash County, No. 21-CF-42; the Hon. William C. Hudson, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Anna C. Carlozzi, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kelli Storckman, State's Attorney, of Mt. Carmel (Patrick Delfino, Edward R. Psenicka, and Adam J. Rodriguez, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |